EUGENE A. WRIGHT, Circuit Judge:
 

 We must decide, among other issues, whether the Railway Labor Act, 45 U.S.C. § 151,
 
 et seq.,
 
 preempts a state law prohibiting employment discrimination on the basis of physical handicap. We hold that it does. We affirm the summary judgment dismissal
 

 of Croston’s action against his railroad-employer and his union.
 

 I.
 

 Croston, a machinist employed by Burlington Northern Railroad (BN) at its Livingston, Montana shop, suffered a heart attack in November 1985. He was not scheduled to return to work until May 1987. While he was on medical leave, BN shut down the Livingston yard.
 

 Employees affected by the shop closure received protective benefits under the collective bargaining agreement, the National Mediation Agreement of Sept. 25, 1964. In some instances, the benefits included the option to move to another BN shop or to take a lump-sum cash settlement. Before he was released to return to work, Croston asked his union, the International Association of Machinists and Aerospace-workers, to advise him if he was eligible for any of those benefits.
 

 The union investigated and submitted a claim on Croston’s behalf requesting transfer benefits, including a new work location, moving expenses, protection against a loss in the sale of his home and seniority privileges. Croston received a copy of the claim and did not object. BN rejected it, asserting that, because Croston held no position at the time of the closure, he was not entitled to protective benefits. The union continued to pursue the grievance and eventually negotiated a settlement with BN. The railroad offered essentially the same package of transfer benefits sought in the initial claim.
 

 Instead of moving to a new job with BN, Croston refused the settlement offer. He requested a lump-sum cash settlement, allegedly given to active, able-bodied employees affected by the closure. In a letter to Cro-ston, the union advised that it considered doubtful the possibility of a cash buy-out. It said it would continue to investigate the allegations that similarly situated employees had received cash severances.
 
 [1]
 

 
 *385
 
 Disappointed with BN’s settlement offer and the union’s position, Croston filed this federal court action. Count I alleged that the union breached its duty of fair representation. Count II alleged that BN and the union acted together to deprive him of benefits under the collective bargaining agreement. Count III alleged that BN violated Montana law by denying him benefits given to similarly situated workers. In briefs before the district court, Croston developed this count as -an employment discrimination claim under Mont.Code.Ann. §■ 49-2-303, arguing that BN discriminated against him because of a physical handicap, i.e., his disabling illness.
 

 On summary judgment, the court dismissed the action. It held that it lacked jurisdiction because Croston had not exhausted his administrative remedies under the collective bargaining agreement. It also ruled that the Railway Labor Act preempted Croston’s state handicap discrimination claim. Croston appeals. ■
 

 II
 

 A. Unfair Representation
 

 We review de novo the granting of a summary judgment motion, examining whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.
 
 Peters v. Burlington N.R.R.,
 
 931 F.2d 534, 537-38 (9th Cir.1990). The existence of subject matter jurisdiction presents a question of law reviewed de novo.
 
 Kruso v. International Tel. & Tel. Corp.,
 
 872 F.2d 1416, 1421 (9th Cir.1989),
 
 cert. denied,
 
 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Whether a union’s conduct amounted to a breach of its duty of fair representation presents a mixed question of law and fact reviewed de novo.
 
 Peters,
 
 931 F.2d at 538.
 

 Under the Railway Labor Act, a union has a statutory duty to represent fairly all members of the employee bargaining unit.
 
 Steele v. Louisville & N.R.R.,
 
 323 U.S. 192, 203, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944). To establish a breach, an employee must demonstrate that the union’s conduct was arbitrary, discriminatory or in bad faith.
 
 Peters,
 
 931 F.2d at 538.
 

 1.
 
 Initial Claim, for Transfer Benefits
 

 The court concluded correctly that, as a preliminary matter, Croston could not demonstrate that the union acted unfairly in pursuing his initial grievance for transfer benefits. It negotiated the claim and BN finally offered the benefits sought.
 

 In addition, the union’s failure to seek a cash buy-out in the initial claim was not arbitrary or in bad faith. It provided Cro-ston with a copy of the claim and he made no objection to its terms. When he refused the settlement offer and asked the union about a cash buy-out, it offered a reasoned explanation why it considered his eligibility doubtful.
 

 If a union provides an explanation for ignoring an argument in an employee’s favor during a grievance procedure, it shows that it at least “deliberated the issue in the first place.”
 
 Peters,
 
 931 F.2d at 540. This demonstrates that the union has exercised “discretionary. decision making” and has committed, at most, a negligent act of judgment, not a breach of the duty of fair representation.
 
 Id.
 
 at 539-540.
 

 2.
 
 Cash Buy-Out
 

 The question of jurisdiction arises in determining whether Croston may bring an action against the union for not ultimately pursuing and/or obtaining his later requests for a cash buy-out. Croston filed no separate administrative claim for those benefits. Generally, employees must exhaust contractual grievance procedures before bringing an action against the employer for breach of a collective bargaining agreement.
 
 Carr v. Pacific Maritime Ass’n,
 
 904 F.2d 1313, 1317
 
 *386
 
 (9th Cir.1990),
 
 cert. denied,
 
 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991). “This requirement applies with equal force to claims brought against a union for breach of the duty of fair representation.”
 
 Id.; see also Beriault v. Local 10, Super Cargoes & Check of I.L. & W.U.,
 
 501 F.2d 258, 266 (9th Cir.1974) (dismissing unfair representation claim against union for failure to pursue contractual grievance procedures).
 

 An employee will be excused from exhausting administrative remedies where (1) the union has sole power under the contract to invoke the higher levels of the grievance procedure
 
 and
 
 if the union has prevented the employee from exhausting his remedies by its wrongful refusal to process the grievance, or (2) where the alleged breach of duty relates to the union’s conduct in negotiating the collective bargaining agreement.
 
 Carr,
 
 904 F.2d at 1319.
 

 Neither exception applies here. The union never explicitly refused to pursue Croston’s claim. It explained that it thought his position was weak but indicated it would investigate further. Even if its response can be characterized as a wrongful refusal to process the grievance, this does not excuse Croston from having to arbitrate. A union’s refusal to process a grievance does not allow an employee to by-pass administrative procedures where he may proceed to arbitration without union representation.
 
 Collins v. Burlington N.R.R.,
 
 867 F.2d 542, 545 (9th Cir.1989). Under the collective bargaining agreement applicable to Croston, an employee may invoke the arbitration procedures on his own.
 
 [2]
 
 The district court also concluded, after receiving special briefing on the subject, that Croston was not time-barred from seeking administrative review.
 

 In short, Croston may still arbitrate his claim for a cash settlement. His action in the district court was premature.
 

 B. Hybrid Claim for Breach of the Bargaining Agreement
 

 Under the Railway Labor Act (RLA), all disputes between railroads and their employees are characterized as either “major disputes” or “minor disputes.” Major disputes concern the formation of collective bargaining agreements or efforts to alter the terms for future agreements. Minor disputes involve the interpretation or application of existing bargaining agreements.
 
 International Ass’n of Machinists v. Aloha Airlines,
 
 776 F.2d 812, 815, (9th Cir.1985).
 

 The RLA requires that minor disputes be submitted for arbitration and federal courts have no subject matter jurisdiction over them.
 
 See
 
 45 U.S.C. § 153 First (i) (providing National Railroad Adjustment Board with exclusive jurisdiction for disputes “growing out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions”);
 
 International Ass’n of Machinists,
 
 776 F.2d at 815.
 

 Congress enacted the RLA dispute resolution provisions to provide for prompt and orderly settlement and “to avoid any interruption to commerce.” 45 U.S.C. § 151a. Consequently, the RLA “reflects strong policies in favor of arbitration and against judicial intervention.”
 
 Brotherhood of Teamsters v. Western Pac. R.R.,
 
 809 F.2d 607, 610 (9th Cir.),
 
 cert. denied,
 
 484 U.S. 852, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987). It provides federal court jurisdiction only to review the final award of the Adjustment Board and then on very limited grounds.
 
 See
 
 45 U.S.C. § 153 First(q). We are reluctant to assert more general subject matter jurisdiction when it “would eviscerate the Railway Labor Act’s system of arbitrating disputes.”
 
 Long v. Flying Tiger Line, Inc.,
 
 994 F.2d 692, 694 (9th Cir.1993).
 

 
 *387
 
 Because of the RLA’s mandatory arbitration scheme, the district court held that it lacked jurisdiction over Croston’s action against the union and BN. It ruled that Croston must resort to the RLA’s grievance procedures and the applicable bargaining agreement. Whether a matter is subject to the Act’s mandatory bargaining provisions is a question of law reviewed de novo.
 
 Brotherhood of Locomotive Eng’rs. v. Burlington N.R.R.,
 
 838 F.2d 1087, 1089 (9th Cir.1988),
 
 vacated on other grounds,
 
 492 U.S. 901, 109 S.Ct. 3207, 106 L.Ed.2d 558 (1989).
 

 Croston argues that his- action falls under-the “futility” exception to the mandatory bargaining scheme. Courts have asserted more general jurisdiction over railroad labor disputes when resort to arbitration would be futile. Employees have successfully circumvented arbitration where they demonstrated that the union and management acted in concert,
 
 see Glover v. St. Louis-San Francisco Ry.,
 
 393 U.S. 324, 331, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969) (claiming that both union and management were discriminating against black employees), or where the union’s. inadequate representation suggested that the arbitration had been tainted,
 
 see Peters,
 
 931 F.2d at 541 (union failed to raise strong argument during grievance procedure).
 

 The court concluded correctly that Croston did not produce a sufficient showing of futility to establish federal subject matter jurisdiction. The record reveals that the union had doubts about Croston’s. eligibility for a cash severance and that it offered a reasoned explanation. “Futility” requires a showing of invidious discrimination or unjustified hostility, not mere disagreement between the employee and the union on the merits of a grievance.
 
 Bautista v. Pan Am. World Airlines,
 
 828 F.2d 546, 552 (9th Cir.1987). Conclusory allegations that do not demonstrate any act of collusion between the union and the railroad will not establish jurisdiction.
 
 Crusos v. United Transp. Union, Local 1201,
 
 786 F.2d 970, 973 (9th Cir.),
 
 cert. denied,
 
 479 U.S. 934, 107 S.Ct. 409, 93 L.Ed.2d 361 (1986).
 

 For jurisdictional analysis, Croston’s hybrid claim for breach of the collective bargaining agreement depends ultimately upon his claim against the union for unfair representation. If an employee sues both his employer and his union, the court must first examine the claim against the union. If the employee does not have a triable claim against the union, then all that remains is one against the employer.
 
 Bautista,
 
 828 F.2d at 551-52. “In that event, [the futility exception] does not apply and the RLA requires that the claim be heard before the Adjustment Board.”
 
 Id.
 
 at 552;
 
 see also Peters,
 
 931 F.2d at 542 (federal court has jurisdiction to hear a claim against-the employer that by-passes normal arbitration procedures only as long as an unfair representation claim against the union remains viable).
 

 Because we conclude that the court dismissed properly the unfair representation claim, no triable action against the union remained. The court lacked jurisdiction to hear Croston’s claim for breach of the collective bargaining agreement.
 

 C. RLA Preemption
 

 The court held that the RLA preempted Croston’s state handicap discrimination claim. We review de novo this question of law.
 
 See Waits v. Frito-Lay, Inc.,
 
 978 F.2d 1093, 1099 (9th Cir.1992),
 
 cert. denied,
 
 — U.S. -, 113 S.Ct. 1047, 122 L.Ed.2d 355 (1993).
 

 The RLA generally preempts state law claims arising from disputes between railroad labor and management. In providing a comprehensive administrative framework to resolve grievances, “Congress made clear its interest in keeping railroad disputes simple and out of the reach of the often -lengthy court process.”
 
 Grote v. Trans World Airlines,
 
 905 F.2d 1307, 1309 (9th Cir.),
 
 cert. denied,
 
 498 U.S. 958, 111 S.Ct. 386, 112 L.Ed.2d 397 (1990). As we have said, a “minor” dispute that concerns the interpretation or application of collective bargaining agreements is subject to mandatory arbitration. Therefore, the RLA preempts
 
 %,
 
 state claim that involves a minor dispute because the complaint must be arbitrated according to the comprehensive railroad labor grievance procedures.
 
 Edelman v. West-
 
 
 *388
 

 em Airlines,
 
 892 F.2d 839, 843 (9th Cir.1989).
 

 Yet state law actions' are not necessarily preempted even if they relate in some way to the collective bargaining agreement. A claim may survive preemption if based upon a state law that establishes rights independent of entitlements under a collective bargaining agreement.
 
 McCall v. Chesapeake & Ohio Ry.,
 
 844 F.2d 294, 300 (6th Cir.),
 
 cert. denied,
 
 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).
 

 The critical question is whether Croston’s state law handicap discrimination claim involves a minor dispute or whether it is sufficiently independent of the collective bargaining agreement. A state claim is a minor dispute if it involves facts “inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the RLA.”
 
 Edelman,
 
 892 F.2d at 843 (quoting
 
 Magnuson v. Burlington Northern, Inc.,
 
 576 F.2d 1367, 1369 (9th Cir.),
 
 cert. denied,
 
 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978)). This court will also examine the claim to determine whether it is “arguably governed” by the collective bargaining agreement or has a “not obviously insubstantial relationship” to the labor contract.
 
 Magnuson,
 
 576 F.2d at 1369, 1370;
 
 see also Consolidated Rail Corp. v. Ry. Labor Executives’ Ass’n,
 
 491 U.S. 299, 307, 109 S.Ct. 2477, 2482, 105 L.Ed.2d 250 (1989) (dispute is minor if the employer’s action is “arguably justified” by terms of the bargaining agreement).
 

 The case law does not offer precise guidance about when a state action may be characterized as “independent” for preemption purposes. Generally, where courts have found state actions sufficiently independent of the RLA grievance mechanism, the activity regulated involved legitimate state interests and an analysis of the collective bargaining agreement was not required.
 
 [3]
 
 In the leading case,
 
 Colorado Anti-Discrimination Comm’n v. Continental Airlines,
 
 372 U.S. 714, 724, 83 S.Ct. 1022, 1027, 10 L.Ed.2d 84 (1963), the Court held that the RLA did not preempt a Colorado racial discrimination statute. Resolution of such a claim ordinarily does not involve interpretation of the collective bargaining agreement.
 
 See also Davies v. American Airlines Inc.,
 
 971 F.2d 463, 466 (10th Cir.1992) (state retaliatory discharge claim not preempted by RLA because gravamen of the complaint was illegal discharge to stop employee’s unionizing activity; judicial inquiry did not require construing “just cause” dismissal provisions of labor contract), ce
 
 rt. denied,
 
 — U.S.-, 113 S.Ct. 2439, 124 L.Ed.2d 657 (1993).
 

 • Montana’s interest in eradicating handicap discrimination seems similar to the independent state interest in regulating racial discrimination identified by
 
 Colorado Anti-Discrimination Comm’n.
 
 Yet the method of resolving a claim based on handicap discrimination differs from one involving'racial discrimination. In both situations, the primary inquiry is whether the railroad had an improper motive for its actions. But determining whether there has been discrimination on the basis of physical handicap often requires preliminary analysis of the collective bargaining agreement, as when the labor contract establishes physical condition requirements for job performance and benefits.
 

 This dispute does not merely touch upon the labor contract. BN asserts that Article I, § 6(f) and § 7 of the collective bargaining agreement make Croston ineligible for a separation or coordination allowance. A court first would have to determine whether Cro-ston has an entitlement to these benefits under the contract before deciding whether
 
 *389
 
 BN discriminated. Perhaps on a different set of facts a railroad employee could bring an action under the Montana statute that would survive RLA preemption. But in this ease the state claim is not only “arguably governed” by the collective bargaining agreement, its resolution depends ultimately upon a preliminary analysis of the labor contract. The RLA preempts such a claim.
 

 Our preemption analysis parallels the reasoning of our sister circuits. Two other 'circuits have held, in related cases, that the RLA preempts state handicap discrimination claims. In
 
 O’Brien v. Consol. Rail Corp.,
 
 972 F.2d 1 (1st Cir.1992),
 
 cert. denied,
 
 — U.S. —, 113 S.Ct. 980, 122 L.Ed.2d 134 (1993), a disabled employee wished to exercise his seniority under the collective bargaining agreement to “bump” another employee who occupied a stevedore position. When the railroad denied his request, he filed a handicap discrimination claim under Massachusetts law. The First Circuit concluded that the RLA preempted the action because the threshold issue was, “aside from his handicap, would O’Brien be eligible [for the position]?”
 
 Id.
 
 at 5. Only after resolving this question, which required analysis of the labor contract, could the court determine if there was discrimination on the basis of handicap.
 
 Id.
 

 Similarly, in
 
 McCall,
 
 844 F.2d at 302, the Sixth Circuit held that the RLA preempted a discrimination action under Michigan’s Handicappers’ Act by an engineer removed from service because of his diabetes. -Thé court-concluded that the state claim necessarily involved inquiry into whether the engineer’s disability related to job performance, a topic subject to arbitration under the collective bargaining agreement.
 
 Id.
 
 at 302-303.
 

 As in the cases decided by the other circuits, the state handicap discrimination claim here can not be resolved without interpreting the underlying collective bargaining agreement. We hold that the RLA preempts Cro-ston’s claim under the Montana statute.
 

 AFFIRMED.
 

 [1]
 

 . Under the collective bargaining agreement, cash payments could have been made as either coordination allowances or separation allowances. An employee receiving a coordination allowance is subject to call to return to service.
 

 Certain employees eligible for coordination allowances may elect to resign and accept a lump-sum separation allowance. Article I, § 6(f) of the Agreement limits the award of a coordination allowance to "the regularly assigned incumbent
 
 *385
 
 of the position abolished." Section 7 sets the same eligibility requirements for separation allowances.
 

 In the letter to Croston, the union explained that, because his position had been filled during his medical leave, he was not a "regularly assigned incumbent." The .union concluded that this probably made Croston ineligible for either form of cash payment. We need not decide the issue. We simply find that the union deliberated the issue and that its conclusion was not unreasonable.
 

 [2]
 

 . Croston argues that only the union can pursue his claims through the contractual grievance procedures because the collective bargaining agreement provides for dispute resolution between railroads and labor organizations, not employees. He reads the agreement quite narrowly. Article VI, § 9 allows any "party” to the agreement to submit a dispute to an arbitration board. The employees are named as parties in the beginning of the agreement, and the labor organizations are mentioned as their representatives. Croston’s position on appeal is also inconsistent with his earlier actions. While the union and BN were bogged down in negotiations, his attorney sent a letter to the union requesting that it tender the claim to Croston "so that he may go forward in his own behalf.”
 

 [3]
 

 . The Supreme Court has articulated a useful standard for determining when a state claim- is sufficiently independent in -analyzing preemption under the related Labor Management Relations Act, 29 U.S.C. § 185. In
 
 Lingle v. Norge Div. of Magic Chef, Inc.,
 
 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988), the. Court instructed that if the state action and dispute resolution pursuant to the labor contract address the same facts, the state claim nevertheless survives LMRA preemption when "resolution of the state-law claim does not require construing the collective bargaining agreement.” We have held that preemption sweeps even broader under the RLA than the LMRA.
 
 See Grote,
 
 905 F.2d at 1309-10 (noting clear Congressional intent to keep railroad labor disputes out of the courts). Thus we apply at least the same standard for determining preemption under the RLA, i.e., whether resolving Croston’s state handicap discrimination action requires construing the collective bargaining agreement.