John ESPINAL, Plaintiff–Appellant,

v.

NORTHWEST AIRLINES; Larry Nunan; Joel Krueger; Susan Jordan, Defendants–Appellees.

No. 94–16231.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 17, 1996.

Decided July 24, 1996.

Cindy O'Hara, Davis, Reno & Courtney, San Francisco, California, for plaintiff-appellant.

William G. Harris, Arnelle, Hastie, McGee, Willis & Greene, San Francisco, California, for defendants-appellees.

Before: LEAVY, T.G. NELSON and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

Plaintiff-appellant John Espinal ("Espinal") appeals from the district court's dismissal of his claims based on preemption under the Railway Labor Act ("RLA"). 45 U.S.C. § 151 *et seq.* Defendant-appellee Northwest Airlines ("Northwest") terminated Espinal when it discovered he had diabetes. Espinal, who was employed pursuant to a collective bargaining agreement ("CBA"), filed suit in state court alleging claims for disability discrimination and breach of contract and the covenant of good faith and fair dealing. Following removal, the district court dismissed all of Espinal's claims, finding that the entire action was preempted under the RLA. Two weeks after the district court ruled, the Supreme Court narrowed the scope of RLA preemption. *Hawaiian Airlines, Inc. v. Norris,* — U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). In this appeal, we must reexamine the district court's decision and our RLA-preemption precedent in light of *Norris.*

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. For the reasons stated below, we conclude that Espinal's disability discrimination claims are not preempted, and therefore reverse as to those claims. We affirm with respect to his contractual claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Espinal is a career airline ramp service worker, or equipment service employee

("ESE"). Among other duties, ESEs are responsible for loading, fueling and towing aircraft. These duties necessarily involve the operation of heavy machinery.

In June, 1991, Northwest offered Espinal a part-time ESE position, provided that he pass a physical exam. Allegedly, on June 8, 1991, Espinal received notice that he had passed the physical examination, and should begin his training program. Based on this assurance of employment, Espinal resigned his job at DynAir in Hawaii, and moved to San Francisco to begin working for Northwest.

Once in San Francisco, Espinal signed an employment contract, which expressly provided that his employment was governed by a CBA. It provides that all disputes concerning discharge must be resolved by an internal grievance process. The CBA also provides that continued employment is dependent upon medical fitness. A separate document prepared by Northwest provides the minimum medical requirements of an ESE: "It is recommended that any condition that might cause momentary or intermittent loss of consciousness or attention should be evaluated and would be expected to be a basis for exclusion from this position."

While still in training, a Northwest official contacted Espinal and informed him that his blood sugar level was above normal. Espinal's doctor sent a letter to Northwest explaining that he was a Type II diabetic, meaning that his condition was controlled by diet and exercise, not insulin. Northwest did not respond, and so Espinal continued with his training program.

Espinal successfully completed his training program and began working for Northwest as a probationary employee. Under the CBA, probationary employees could be fired without cause. On July 2, 1991, Northwest rescinded its offer of employment claiming that Espinal had failed the pre-placement physical examination. Espinal then went to a diabetes specialist, who wrote to Northwest that Espinal's diabetes did not represent a hazard: "There is no medical reason why he is unsafe around heavy equipment or airplanes." Again, Northwest did not respond.

Espinal thereafter filed suit against Northwest, Larry Nunan, Joel Krueger and Susan Jordan in San Francisco Superior Court.[1] The first amended complaint alleges four causes of action: (1) disability discrimination under California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 et seq.; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; and (4) violation of public policy. Northwest removed the action to federal court asserting federal question jurisdiction based on the RLA and the Federal Aviation Act ("FAA"), 49 U.S.C.App. § 1301 et seq.

Northwest then filed a motion to dismiss the action under Fed. R. Civ. P. 12(h)(3), contending it was preempted by the RLA and the FAA.[2] The district court granted Northwest's motion, treating it as a motion for summary judgment. The court concluded that Espinal's discharge was a minor dispute under the RLA, which had to be resolved by the internal grievance process of the CBA.[3]

## STANDARD OF REVIEW

 We review a court's decision regarding preemption de novo. Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1523 (9th Cir. 1995). We review a grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

## DISCUSSION

**I. General Background: Preemption Under the RLA.**

 Congress enacted the RLA, which was extended to cover the airline industry in

---

1. The latter three defendants are supervisory employees of Northwest. Collectively, all defendants are referred to as "Northwest."

2. The district court based its ruling on RLA preemption and did not address the FAA. Neither do we.

3. The court dismissed the action without prejudice because, as a probationary employee, Espinal would not have a right to grieve his discharge under the CBA. Recognizing that Congress did not intend to leave probationary employees without a remedy, the court left open the possibility that Espinal could seek an order compelling arbitration. These issues are not before us.

1936, "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Norris,* —— U.S. at ——, 114 S.Ct. at 2243 (citing *Atchison, Topeka & Santa Fe Ry. v. Buell,* 480 U.S. 557, 562, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987)). In order to realize this goal, the RLA provides for mandatory arbitration of two classes of disputes. *Id.* (citing 45 U.S.C. § 151a). The first class, "major" disputes, involve disputes over "the formation of collective bargaining agreements or efforts to secure them." *Id.* at ——, 114 S.Ct. at 2244 (quoting *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989)). The other class of disputes, "minor" disputes, "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Id.* (quoting *Brotherhood of R.R. Trainmen v. Chicago River & Ind. R.R. Co.,* 353 U.S. 30, 33, 77 S.Ct. 635, 637, 1 L.Ed.2d 622 (1957)).

Before *Norris,* this circuit considered the scope of minor disputes under the RLA to be quite expansive. *See Felt v. Atchison, Topeka & Santa Fe Ry.,* 60 F.3d 1416, 1420 (9th Cir.1995) (noting post-*Norris,* that Ninth Circuit had previously applied an expansive definition of minor disputes). In holding that Espinal's claims were preempted by the RLA, the district court relied on our pre-*Norris* definition of minor disputes.[4] *Norris,* however, substantially narrowed the scope of RLA preemption, and implicitly overruled more expansive definitions. *See id.* (refusing to follow pre-*Norris* Ninth Circuit case law in Title VII case); *Taggart v. Trans World Airlines, Inc.,* 40 F.3d 269, 272 (8th Cir.1994) ("We think *Norris* narrowed the scope of federal pre-emption under the RLA."); *Westbrook v. Sky Chefs, Inc.,* 35 F.3d 316, 317–18 (7th Cir.1994) (*Norris* overrules prior preemption standard).

*Norris* held that Congress intended the RLA to preempt only those disputes "involving the interpretation or application of existing labor agreements." —— U.S. at ——, 114 S.Ct. at 2245. That is, the RLA preempts only those minor disputes "that are grounded in the collective-bargaining agreement." *Id.* Those claims or causes of action involving rights and obligations that exist independently of the CBA are not preempted. *Id.* at ——, 114 S.Ct. at 2246.

To determine whether the claim is preempted by the RLA, courts should apply the preemption test used in cases under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *Id.* at ——, 114 S.Ct. at 2249 (citing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). In RLA cases then, as in LMRA cases, courts must look to the source of the right asserted by the plaintiff. *Id.* at ——, 114 S.Ct. at 2247. Where a plaintiff contends that an employer's actions violated rights protected by the CBA, there is a minor dispute subject to RLA preemption. *Id.* at ——, 114 S.Ct. at 2246.

By contrast, where a plaintiff contends that an employer's actions violated a state-law obligation, wholly independent of its obligations under the CBA, there is no preemption. *Id.* The RLA will preempt a state law claim, only if it "is dependent on the interpretation of a collective-bargaining agreement." *Id.* at ——, 114 S.Ct. at 2249 (citing *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)).

## II. Disability Discrimination Claims: FEHA and Violation of Public Policy.[5]

Turning to the parties specific arguments, Espinal contends that his discrimination

---

**4.** Specifically, the district court relied on *Melanson v. United Air Lines, Inc.,* 931 F.2d 558, 562 (9th Cir.), *cert. denied,* 502 U.S. 865, 112 S.Ct. 189, 116 L.Ed.2d 150 (1991). *Melanson* defined a minor dispute as: (1) a dispute regarding "rates of pay, rules and working conditions[;]" (2) a dispute "arguably governed by the CBA[;]" (3) a dispute "inextricably intertwined with the grievance machinery" of a CBA; and (4) a dispute involving the "interpretation of a current" CBA. *Id.* (internal quotations omitted). We have already recognized that this expansive definition has been limited in part by *Norris. Felt,* 60 F.3d at 1420.

**5.** The parties treat Espinal's claim for violation of public policy as a companion claim to his

claims are not preempted by the RLA, because they exist independently of the CBA. He is correct.

■ In a case factually similar to the one at bench, we considered whether a disability discrimination claim brought under California's FEHA was preempted under the LMRA. *Jimeno*, 66 F.3d at 1522–28. In *Jimeno*, Mobil terminated the plaintiff following a determination that he was an "unfit" worker due to a degenerative disc disease. *Id.* at 1519. The plaintiff brought a FEHA claim, alleging that Mobil failed to accommodate his disability. *Id.* To determine whether the asserted state-law right was independent of the CBA, *Jimeno* undertook the following three-part analysis: (1) Does the CBA contain provisions that govern the actions giving rise to the state claim? (2) Is the state statute "sufficiently clear" so that the claim can be evaluated without consideration of overlapping provisions in the CBA? (3) Has the state shown an intent not to allow the statute to be altered or removed by private contract? *Id.* at 1523 (quoting *Miller v. AT & T Network Sys.*, 850 F.2d 543, 548 (9th Cir.1988)). Under this analysis, "[a] state law will be preempted only if the answer to the first question is 'yes,' and the answer to either the second or third is 'no.'" *Id.* (quoting *Miller*, 850 F.2d at 548). Guided by this framework, we conclude Espinal's discrimination claims are not preempted.

### A. Does the CBA Govern the Actions Giving Rise to the Claim?

■ The first prong of the *Miller* test requires us to determine "whether the CBA must serve as the measuring rod in determining whether [the defendant] acted reasonably." *Jimeno*, 66 F.3d at 1524. That is, even though a CBA contains a physical fitness requirement, the crucial inquiry is whether the CBA establishes "a comprehensive framework for challenging those determinations." *Id.* *Jimeno* concluded that where the CBA is silent as to how it will address claims of disability discrimination, or accommodate disabled employees, the CBA does not govern the actions giving rise to the claims. *Id.*

Here, the CBA provided that "continued employment is dependent upon remaining physically and mentally fit," and Northwest developed minimum medical qualifications for ESEs. However, the CBA does not provide a framework for challenging determinations that an employee is not physically fit, nor does it provide a mechanism to accommodate disabled workers. Thus, in order to evaluate Espinal's FEHA claim, a court will not need to resort to an interpretation of the CBA. Accordingly, the CBA does not govern the actions that give rise to the disability discrimination claims. The answer to the first *Miller* question, therefore, must be "no."

### B. Has the State Articulated a Sufficiently Clear Standard to Evaluate the Claims without Considering Overlapping Provisions of the CBA?

■ In the next *Miller* question, we must determine whether the state right is based upon a sufficiently clear standard, or whether the claim is so intertwined with the operation of the CBA that it cannot be assessed without consideration of the CBA's overlapping provisions. *Jimeno*, 66 F.3d at 1526. This inquiry focuses on the independence of the state claim. *Id.* at 1527.

Here, Espinal's claims that his employer's failure to accommodate his disability violated FEHA can be analyzed entirely apart from the CBA. This is true "even though the factual inquiry [under the FEHA] deals with the same underlying factual situation that is governed by [the CBA's] fitness examination provisions." *Jimeno*, 66 F.3d at 1524.

Moreover, as recognized by *Jimeno*, FEHA has clear statutory and regulatory standards that set forth employers' duties under the Act. *Id.* at 1527; *see also,* Cal. Code Regs. tit. 2, §§ 7293.9(a)(1)-(3) (addressing factors to assess employers' efforts to accommodate disabled workers). Espinal's disability discrimination claims must be analyzed in accordance with these requirements, which "can be evaluated without considering the provisions of the CBA." *Jime-*

FEHA claim, and we therefore address the claims together.

*no,* 66 F.3d at 1527. Thus, the answer to the second *Miller* question must be "yes."

### C. Has the State Shown an Intent Not to Allow Its Prohibitions to be Altered or Removed by Private Contract?

■ This last prong of the *Miller* test has already been answered in the affirmative by *Jimeno.* 66 F.3d at 1527–28. FEHA expressly provides that the right to employment without discrimination based on physical handicap is a public policy of the state. Cal. Gov't Code § 12920 ("It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of ... physical handicap"). Northwest "cannot assert that the state is indifferent to negotiation and alteration of the right by private contract." *Jimeno,* 66 F.3d at 1528. The answer to the third *Miller* question, therefore, is "yes."

Accordingly, we conclude that preemption under the RLA is unwarranted under the *Miller/Jimeno* test. Espinal's disability discrimination claims can be analyzed completely apart from the CBA. *Accord Jimeno,* 66 F.3d at 1528 ("We need not consult the CBA to determine whether Mobil's decision to termination Jimeno because of his physical condition constitutes a prima facie claim under the FEHA"); *Taggart,* 40 F.3d at 274 (holding claim for disability discrimination was not preempted by the RLA). Thus, we hold that because Espinal's disability discrimination claims are not dependent on an interpretation of the CBA, they are not preempted by the RLA.[6]

### III. Contractual Claims: Breach of Contract & Breach of Good Faith and Fair Dealing.[7]

We now turn to the contractual claims. Espinal contends that these claims cannot be preempted because the contract that was breached, the "hiring contract", arose prior to the commencement of coverage under the CBA. We disagree.

Specifically, Espinal argues that Northwest induced him to leave DynAir by assuring him that he had passed his physical exam. This hiring contract was allegedly breached when Northwest rescinded its offer of employment on the grounds that Espinal had not, in fact, passed the examination. According to Espinal, this contract exists independently of the CBA.

■ The Supreme Court long ago recognized the viability of hiring contracts: "In the sense of contracts of hiring, individual contracts between the employer and employee are not forbidden, but indeed are necessitated by the collective bargaining procedure." *J.I. Case Co. v. NLRB,* 321 U.S. 332, 335–36, 64 S.Ct. 576, 579, 88 L.Ed. 762 (1944); *see also Order of R.R. Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 346–47, 64 S.Ct. 582, 585, 88 L.Ed. 788 (1944) (holding the principles of *J.I. Case* apply to RLA cases). However, to protect the efficacy of the collective bargaining scheme, an individual contract that conflicts with a CBA must be superseded by that

---

**6.** Northwest relies on a string of pre-*Norris* cases, which have held disability discrimination claims to be preempted by the RLA. *See Croston v. Burlington N. R.R.,* 999 F.2d 381 (9th Cir. 1993); *O'Brien v. Consolidated Rail Corp.,* 972 F.2d 1 (1st Cir.1992), *cert. denied,* 506 U.S. 1054, 113 S.Ct. 980, 122 L.Ed.2d 134 (1993); *McCall v. Chesapeake & Ohio Ry. Co.,* 844 F.2d 294 (6th Cir.), *cert. denied,* 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). As the Eighth Circuit has already recognized these cases rely on the more expansive view of RLA preemption that has since been overruled by *Norris. Taggart,* 40 F.3d at 274–75; *see also Felt,* 60 F.3d at 1420 (refusing to apply pre-*Norris* RLA preemption analysis).

Moreover, *Croston,* the Ninth Circuit authority, is factually distinguishable. 999 F.2d at 388. To determine whether the plaintiff could state a claim for disability discrimination, a court would first have had to find that the CBA entitled the plaintiff to a separation allowance. 999 F.2d at 388. Accordingly, the discrimination claim was preempted because it could not have been analyzed independently of the CBA. *Id.* at 389. *Croston,* however, anticipated that "on a different set of facts a railroad employee" could bring an action that would survive RLA preemption. *Id.* The case at bar presents the "different set of facts" foretold by *Croston.*

**7.** The parties treat the breach of covenant claim as a companion to the breach of contract claim, and we therefore address the claims together.

CBA. *J.I. Case*, 321 U.S. at 337–39, 64 S.Ct. at 580–81.

 In formally accepting his offer of employment, Espinal signed a contract indicating that his employment would be covered by a CBA. Thus, even assuming Espinal had an enforceable hiring contract with Northwest, the CBA superceded that agreement to the extent that the contracts differed. The CBA provided that probationary employees could be fired without cause. Any rights that the hiring contract may have provided beyond an at-will employment relationship were thereby extinguished by the CBA. *Cf. id.* at 338, 64 S.Ct. at 580 ("The practice and philosophy of collective bargaining looks with suspicion on such individual advantages."). Accordingly, Espinal's only contractual remedies lie in the grievance procedures set forth under the CBA. We therefore conclude that his contractual claims are preempted by the RLA.

## IV. Conclusion.

The disability discrimination claims (Counts One and Four) are not preempted under the RLA; however, the contractual claims (Counts Two and Three) are preempted.

AFFIRMED in part, REVERSED in part, and REMANDED. Each party shall bear his, its or her own costs on appeal.