**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STARLA ROLLINS, an individual, *Plaintiff-Appellant*, | No. 14-55971 |
| | D.C. No. 5:13-cv-01312-R-OP |
| v. | |
| COMMUNITY HOSPITAL OF SAN BERNARDINO, erroneously sued as Dignity Health, DBA Dignity Health Catholic Healthcare West, *Defendant*, | OPINION |
| and | |
| SERVICE EMPLOYEES INTERNATIONAL UNION-UNITED HEALTHCARE WORKERS WEST (SEIU-UHW), a California union, *Defendant-Appellee.* | |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued May 2, 2016
Submitted October 26, 2016
Pasadena, California

Filed October 26, 2016

Before: William A. Fletcher, and Ronald M. Gould, Circuit Judges, and Ivan L.R. Lemelle,[*] District Judge.

Opinion by Judge W. Fletcher;
Concurrence by Judge Lemelle

## SUMMARY[**]

### Labor Law

The panel reversed the district court's order granting summary judgment to defendant union on a claim under § 301 of the Labor Management Relations Act.

During a reduction in force, the plaintiff was laid off from her position as a billing coordinator at a hospital. To prevail on her claim against the union in this hybrid fair representation/§ 301 suit, the plaintiff was required to show both that the hospital breached a collective bargaining agreement ("CBA") and that the union breached its duty of fair representation by failing to pursue her grievance regarding the hospital's failure to allow her to "bump" back to her prior ward clerk position, rather than be laid off. The plaintiff asserted that this failure violated both a 2008 CBA

---

[*] The Honorable Ivan L.R. Lemelle, United States District Judge for the Eastern District of Louisiana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and a 2007 side agreement, known as the Seniority Agreement, which had been negotiated on her behalf by a union representative.

The panel held that the Seniority Agreement was neither inadmissible under the parol evidence rule nor superseded by the 2008 CBA. The panel concluded that the Seniority Agreement did not conflict with either the 2008 CBA or a 2012 memorandum of understanding through which the union and the hospital implemented the reduction in force. The panel held that the hospital breached both the Seniority Agreement and the CBA.

The panel held that the plaintiff also established a triable issue whether the union breached its duty of fair representation by processing her grievance in a perfunctory manner. The plaintiff submitted sufficient evidence that the union never seriously considered her rights under the Seniority Agreement; improperly lumped her with other, non-similarly situated employees; and provided factually contested reasons for rejecting her grievance.

The panel remanded the case for further proceedings.

Concurring, District Judge Lemelle wrote that in addition to the question whether the union breached its duty of fair representation, the question whether the Seniority Agreement remained in effect after the negotiation of the CBA should also be left to the jury.

## COUNSEL

Douglas N. Silverstein (argued) and Michael Gregory Jacob, Kesluk Silverstein & Jacob P.C., Los Angeles, California; Janet Gusdorff, Gusdorff Law P.C., Westlake Village, California; for Plaintiff-Appellant.

Monica Guizar (argued), Jacob J. White, and Bruce A. Harland, Weinberg Roger & Rosenfeld, Los Angeles, California, for Defendant-Appellee.

## OPINION

W. FLETCHER, Circuit Judge:

Plaintiff-Appellant Starla Rollins appeals the district court's grant of summary judgment to Defendant SEIU-UHW, Rollins's former union, on Rollins's § 301 claim under the Labor Management Relations Act. We agree with Rollins that summary judgment was improperly granted, reverse the district court's order, and remand for further proceedings consistent with this decision.

### I. Background

Plaintiff Rollins worked for the Community Hospital of San Bernardino ("Hospital") for over twenty years. In 2002, Rollins became a member of the Hospital's union, Defendant SEIU-UHW ("Union"). Rollins was active in the Union, serving as a member of the bargaining team and as a union steward.

In 2007, Rollins was working as a "Ward Clerk" for the Hospital when she was offered a promotion to become the Maternal Child Health ("MCH") Billing Coordinator. Rollins was worried that, if she switched jobs and accepted the position, she would lose the seniority she had accrued. Rollins therefore had a union representative negotiate a side agreement (the "Seniority Agreement") with the Hospital. The 2007 Seniority Agreement provided that, in the event that the MCH Billing Coordinator position was eliminated pursuant to a reduction in force ("RIF"), Rollins would be permitted to "bump" back to her old position as a Ward Clerk. The Seniority Agreement was memorialized in emails between the Hospital's Director of Human Resources, Elizabeth Sanchez, and Union Representative Jill King.

In 2008, the Hospital and Union agreed to a new Collective Bargaining Agreement ("CBA"). Negotiations for the 2008 CBA were already underway when Sanchez, acting for the hospital, and King, acting for Rollins, entered into the Seniority Agreement. Article 3 of the 2008 CBA provided: "No employee shall suffer any reduction in wages, benefits or other terms and conditions of employment, economic or otherwise, as a result of coverage under this Agreement." The CBA provided, further, that "[u]pon mutual agreement, the Union and the Employer may agree to an alternative arrangement regarding reduction in force."

In 2012, the Hospital implemented a reduction in force. The Hospital and the Union entered into a "Memorandum of Understanding" ("MOU") in order to implement this reduction. The 2012 MOU stated that several positions, including the MCH Billing Coordinator position, were being eliminated pursuant to the RIF. The MOU provided several rights to affected employees, including severance, training

opportunities, and an opportunity to bid for other open positions at the Hospital. Importantly for purposes of this case, the MOU neither prohibited "bumping" nor eliminated the "Ward Clerk" position to which Rollins was allowed to "bump" back pursuant to the Seniority Agreement.

In October 2012, Rollins was informed that she was being laid off under the RIF. Rollins raised with the Union her 2007 Seniority Agreement and right to "bump" back to her old Ward Clerk position. Union Representative Susan (Trockel) Lucio responded "that the email was not an enforceable agreement and that the Union could not rely on the email to challenge the reduction in force." Rollins was then terminated without being allowed to "bump" back to her old position. A subsequent class action grievance objecting to the RIF, submitted on behalf of Rollins and several other employees, was rejected by the Union.

Rollins sued both the Hospital and the Union under § 301 of the Labor Management Relations Act. 29 U.S.C. § 185. Rollins alleged that the Hospital's failure to allow her to "bump" back to her prior Ward Clerk position violated the 2007 Seniority Agreement and the 2008 CBA. She also contended that the Union breached its duty of fair representation by failing to pursue her grievance on this issue. Rollins subsequently settled her suit against the Hospital.

The district court granted summary judgment to the Union. The court concluded that the 2007 Seniority Agreement had once been an enforceable agreement. It nonetheless granted summary judgment to the Union, holding that the agreement was no longer enforceable. According to the district court, the Security Agreement either was inadmissible under the parol evidence rule or was superseded

by the 2008 CBA. Alternatively, the district court held summary judgment appropriate because "the Union did not breach its duty of fair representation." Rollins appeals.

## II. Discussion

Rollins has brought a "hybrid fair representation/ § 301 suit" against the Union. *Bliesner v. Comm'n Workers of Am.*, 464 F.3d 910, 913 (9th Cir. 2006); *see generally* 29 U.S.C. § 185. A § 301 claim formally "comprises two causes of action": (1) a cause of action against the employer for breach of the collective bargaining agreement, and (2) a suit against the union for breach of the union's duty of fair representation. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). A § 301 claim may be brought "against the union, the employer, or both." *Bliesner*, 464 F.3d at 913. This appeal involves only Rollins's claim against the Union, as the Hospital has already settled. To prevail Rollins must show both that (1) the Hospital breached the CBA, and (2) the Union breached its duty of fair representation. *See DelCostello*, 462 U.S. at 164–65.

We review the district court's grant of summary judgment de novo. We construe the disputed facts in favor of Rollins, the nonmoving party. *Bliesner*, 464 F.3d at 913; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). We conclude that the Seniority Agreement is consistent with the CBA and the MOU, that the Hospital has breached the Seniority Agreement and the CBA, and that triable issues of fact exist as to whether the Union breached its duty of fair representation.

A.  Hospital's Breach of the Seniority Agreement and the
                              CBA

    To decide whether the Hospital breached a duty it owed
to Rollins, we analyze the interaction of three different
documents: (1) the 2007 Seniority Agreement granting
Rollins the right to "bump" back to her old position as Ward
Clerk, (2) the 2008 CBA between the Hospital and the Union,
and (3) the 2012 MOU implementing the RIF.

    The parties agree that the Hospital did not permit Rollins
to "bump" back to her previous Ward Clerk position.  The
parties also agree that the Seniority Agreement was, at one
point, a valid and enforceable agreement.  They dispute only
whether the Seniority Agreement continued to be valid and
enforceable after the adoption of the 2008 CBA.  The Union
argues that the Seniority Agreement (1) is inadmissible under
the parol evidence rule or (2) was superseded by the 2008
CBA.  We disagree.

    To prevail on either argument, the Union must show that
the Seniority Agreement conflicts with the 2008 CBA or the
2012 MOU.  *See Pace v. Honolulu Disposal Serv., Inc.*,
227 F.3d 1150, 1157–58 (9th Cir. 2000) (noting that the parol
evidence rule "operates to bar extrinsic evidence of an
agreement *inconsistent* with an unambiguous writing"
(emphasis added)); *Espinal v. Nw. Airlines*, 90 F.3d 1452,
1458–59 (9th Cir. 1996) ("[A]n individual contract that
*conflicts* with a CBA must be superseded by that CBA."
(emphasis added)); *Melanson v. United Air Lines, Inc.*,
931 F.2d 558, 561 (9th Cir. 1991).  The Seniority Agreement
conflicts with neither.

First, the Seniority Agreement does not conflict with the 2008 CBA. Indeed, the CBA contemplates and approves of side agreements dealing with RIFs. Article 14, Section E, of the CBA specifically provides that "[u]pon mutual agreement, the Union and the Employer may agree to an alternative arrangement regarding reduction in force." The Seniority Agreement is such an "alternative arrangement regarding reduction in force," providing that Rollins will be "allow[ed] . . . to bump into the Ward Clerk position in the MCH cluster in the event of a RIF."

Second, the Seniority Agreement does not conflict with the 2012 MOU. The MOU states that, pursuant to a RIF, the "Billing Coordinator" position in the Maternal Child Health Department was eliminated. Rather than conflicting with the MOU, the Seniority Agreement contemplates the possibility of such an MOU. That is, the Seniority Agreement contemplates the possibility of the MCH Billing Coordinator position being eliminated in a RIF, and it provides what should happen in that event. The Seniority Agreement specifically provides that "[i]n [the] event this position [MCH Billing Coordinator] is eliminated it will be able [to] bump to a Ward Clerk (Clerk II) in the MCH Cluster." Far from being inconsistent with the Seniority Agreement, the MOU is the condition precedent (elimination of the MCH Billing Coordinator position) that triggers the operation of the Seniority Agreement.

Finally, the Union also appears to argue that Rollins cannot prevail because, even if she can show a breach of the Seniority Agreement, she has not shown a breach of the CBA. Rollins has shown a breach of both. The Labor Management Relations Act applies broadly to "contracts between an employer and a labor organization representing employees,"

not exclusively to collective bargaining agreements. 29 U.S.C. § 185(a). The Seniority Agreement falls within § 185(a) as a contract negotiated between the Hospital (an employer) and the Union (a labor organization). The Seniority Agreement is also a part of the CBA. *See Inlandboatmens Union of Pac. v. Dutra Group*, 279 F.3d 1075, 1079 (9th Cir. 2002), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) ("[A] collective bargaining agreement is not limited solely to the specific provisions of the basic labor contract formally executed by the parties, but it may also include, among other things, written side agreements and oral understandings entered into by the parties to the collective bargaining relationship.").

B. Union's Breach of the Duty of Fair Representation

While Rollins has demonstrated a violation of a "contract[] between an employer and a labor organization representing employees," 29 U.S.C. § 185(a), her § 301 claim against the Union can prevail only if she also shows a "breach of the union's duty of fair representation." *DelCostello*, 462 U.S. at 164; *see Bliesner*, 464 F.3d at 913–14. "A union breaches its duty of fair representation when its 'conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'" *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 879 (9th Cir. 2007) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). Rollins contends that the Union's handling of her Seniority Agreement grievance was "arbitrary" because it failed to investigate adequately. "A union acts 'arbitrarily' when it simply ignores a meritorious grievance or handles it in a perfunctory manner." *Peterson v. Kennedy*, 771 F.2d 1244, 1253–54 (9th Cir. 1985) (citing *Vaca*, 386 U.S. at 191).

In order to avoid breaching the duty of fair representation, a Union must "conduct a 'minimal investigation' of a grievance that is brought to its attention." *Id*. at 1254 (citing *Tenorio v. NLRB*, 680 F.2d 598, 601 (9th Cir. 1982)).

Rollins has submitted enough evidence that the Union processed her grievance "in a perfunctory manner" to allow her to survive the Union's motion for summary judgment. *Peterson*, 771 F.2d at 1254. Considering the evidence in the light most favorable to Rollins, we reach this conclusion for three reasons.

First, the Union never seriously considered Rollins's rights under the Seniority Agreement. A class action grievance was filed by Union Representative Ozier on behalf of Rollins and several other Hospital employees, but it was a general challenge to the RIF. It did not specifically challenge the Hospital's failure to honor Rollins's Seniority Agreement. The Union Appeal Panel, the appellate body that reviewed the denial of the class action grievance, does not appear to have "deliberated" the Security Agreement. *Cf. Slevira v. Western Sugar Co.*, 200 F.3d 1218, 1221 (9th Cir. 2000). The record suggests that the documents sent to the panel did not include the Seniority Agreement. Rollins was present at the Union Appeal Panel's hearing, but she stated that she did not present the Security Agreement or make any arguments related to it. Although Ozier testified in her deposition that she thought the Seniority Agreement was provided to the panel, she stated that she could not recall for sure.

Second, the Union improperly lumped Rollins with other, non-similarly situated employees. Because Rollins was the beneficiary of a Seniority Agreement providing her an additional right (the right to "bump" back to her old position),

she was differently situated from other employees terminated during the RIF. The class action grievance does not appear to have raised the issue of Rollins's Seniority Agreement. We have previously recognized that a union has "acted arbitrarily where it failed to . . . consider individually the grievances of particular employees where the factual and legal differences among them were significant." *Peterson*, 771 F.2d at 1254 (citing *Gregg v. Chauffeurs, Teamsters & Helpers Union Local 150*, 699 F.2d 1015, 1016 (9th Cir. 1983)).

Third, the Union provided factually contested reasons for rejecting Rollins's grievance. Although we will "not question whether the [Union's] reasoning" for rejecting a grievance "was faulty or not," *Peters v. Burlington N. R. Co.*, 931 F.2d 534, 540 (9th Cir. 1990), when a grievance is "important and meritorious" a union must provide a "more substantial [ ] reason" for abandoning it. *Gregg*, 699 F.2d at 1016 (noting that the "merits of the grievance" are "relevant to the sufficiency of the union's representation"); *see also Peters*, 931 F.2d at 540 (noting that, when evaluating whether a union acted arbitrarily, a court must "evaluate the strength of the employee's grievance"). As explained above, Rollins has shown a breach of the Seniority Agreement and the CBA by the Hospital, thereby demonstrating that she had an important and meritorious grievance. The Union therefore needed to provide a "more substantial" reason for failing to pursue her claim.

Union Representative Lucio stated during an October 2012 meeting that the Seniority Agreement "was not an enforceable agreement." Lucio, however, did not explain why she believed that this was so. The Union's Director of Representational Excellence, Marcus Hatcher, claimed to

have reviewed the Seniority Agreement.  But he asserted that the Seniority Agreement was "not relevant to the MOU" and unenforceable because "it can't supersede a contract."  There are two problems with Hatcher's reasoning.  First, as explained above, the Seniority Agreement was neither inconsistent with, nor superseded by, the 2008 CBA.  *See Espinal*, 90 F.3d at 1458–59; *Melanson*, 931 F.2d at 561.  Second, Hatcher's statement conflicts with the Union's longstanding practice of negotiating individual side agreements for employees, consistent with the CBA.  According to the Director of Human Resources Elizabeth Sanchez (who negotiated the Seniority Agreement on behalf of the Hospital), the Hospital "typically reached agreements pertaining to single employees that were not expressly referenced in the CBA."  An employee of the Union, John Borsos, confirmed that the Union "regularly [entered into] side letters or agreements that were not expressly referenced in the CBA."  According to Borsos, it was the Union's "standard practice" to enter into these side agreements.

Finally, Ozier testified that, during a December 2012 meeting between the Hospital and Union, an unidentified person told her that the Seniority Agreement emails "appeared [to be] cut-and-paste and therefore [were] not going to be acknowledged."  If the Union had doubts about the authenticity of the emails that constituted the Seniority Agreement, it could easily have investigated and determined the truth of the matter.  Union Representative Jill King, who negotiated the agreement on Rollins's behalf, stated that the agreement was "appropriately maintained and preserved" in the Union's own files, and the Agreement was negotiated using official Union and Hospital email addresses.  Further, the two people who negotiated the Seniority Agreement — King and Sanchez — submitted declarations stating that, if

asked, they would have confirmed the authenticity of the Seniority Agreement. Although a union can legitimately decline to pursue a grievance on authenticity grounds, the Union's decision to dismiss the Seniority Agreement on that ground without any investigation, if proven at trial, would support Rollins's argument that the Union acted arbitrarily. *See Tenorio*, 680 F.2d at 601 ("To comply with its duty, a union must conduct some minimal investigation of grievances brought to its attention.").

We recognize that Rollins has the heavy burden of showing that the Union's handling of her claim under the Seniority Agreement was arbitrary. *See Beck*, 506 F.3d at 879. Unions maintain "wide discretion to act in what they perceive to be their members' best interests," and we "accord substantial deference" to the Union's decision not to pursue Rollins's Seniority Agreement claim. *Peterson*, 771 F.2d at 1253 (citation omitted). At the same time, there is ample evidence to support a contrary conclusion — that the Union acted improperly by (1) failing to put Rollins's claim through the Union's own formal mechanisms for reviewing the merits of grievances, (2) improperly including Rollins in a class action grievance that did not raise her specific claim, and (3) providing weak or invalid justifications for rejecting Rollins's claim. A jury that resolves the factual disputes in Rollins's favor could find that the Union's treatment of Rollins's rights under the Seniority Agreement was "perfunctory" at best, and therefore "arbitrary." *Peterson*, 771 F.2d at 1254.

## Conclusion

We conclude that Rollins presented sufficient evidence to counter the Union's motion for summary judgment on her

hybrid claim. We conclude that Rollins has shown a violation of the Security Agreement and the CBA. We also conclude that, if Rollins's evidence is believed, she has shown a violation of the Union's duty of fair representation. We therefore reverse the district court's order granting summary judgment to the Union and remand for further proceedings.

**REVERSED and REMANDED.**

LEMELLE, Senior District Judge, concurring:

I concur with the majority opinion to reverse the decision granting defendant's motion for summary judgement. Nonetheless, it is the role of the factfinder and not this Court to decide the relationship between Rollins's Seniority Agreement ("SA") and the Collective Bargaining Agreement ("CBA"). The majority opinion only leaves to the jury the question of whether the Union breached its duty of representation. The factfinder should also be tasked with determining whether or not the SA should remain in effect after the negotiation of the CBA.

The relationship between the SA and CBA is less clear than the majority conveys. A jury could determine whether Rollins, who was present for negotiations of the CBA, would be entitled to have the benefits of a previous agreement considered at all without explicitly incorporating them in the subsequent agreement. The SA should be interpreted through the introduction of parol evidence, weighed by the jury in order to resolve this factual inquiry.

When reviewing similar contracts in the past, this Court has permitted the use of parol evidence. In *Cappa*, this Court explained a CBA that was not fully integrated and recognized the existence of other agreements, like the one at issue in the present matter, was "far from being an unambiguous instrument" and therefore allowed parol evidence of an oral agreement to vary the terms of the CBA. *Cappa v. Wiseman*, 469 F. Supp. 437, 440 (N.D. Cal. 1979), *aff'd*, 659 F.2d 957 (9th Cir. 1981) ("In light of these principles, and because the Agreement is far from being an unambiguous instrument, the terms of which are sufficient unto themselves, it is appropriate to consider parol evidence to determine the parties' intent and interpretation of the contract terms."). Respectfully, this Court should not summarily decide the relationship between the SA and the CBA. The parties who entered into the SA and the CBA should be given a chance to litigate the intended relationship between the two contracts using parol evidence.