**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALASKA AIRLINES INC., an
Alaska corporation,
        *Plaintiff-Appellant*,

v.

JUDY SCHURKE, in her official
capacity as Director of the State
of Washington Department of
Labor and Industries; ELIZABETH
SMITH, in her official capacity as
Employment Standards Program
Manager of the State of
Washington Department of
Labor and Industries,
        *Defendants-Appellees*,

ASSOCIATION OF FLIGHT
ATTENDANTS - COMMUNICATION
WORKERS OF AMERICA, AFL-
CIO,
  *Intervenor-Defendant-Appellee.*

No. 13-35574

D.C. No.
2:11-cv-00616-JLR

OPINION

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted May 6, 2015
Seattle, Washington

Filed January 25, 2017

Before: J. Clifford Wallace, Andrew J. Kleinfeld,
and Morgan Christen, Circuit Judges.

Opinion by Judge Kleinfeld;
Dissent by Judge Christen

## SUMMARY[*]

**Labor Law**

The panel reversed the district court's summary judgment in favor of the defendants in a labor law suit brought by Alaska Airlines, Inc.

A flight attendant claimed entitlement under the Washington Family Care Act to reschedule leave to care for her child who was ill. She and her union filed an administrative complaint with the State of Washington Department of Labor and Industries, which determined that the flight attendant was entitled to use her December vacation leave to care for her child in May.

The panel held that the Railway Labor Act preempted the flight attendant's claim under the Washington Family Care

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Act, which provides that entitlement to leave is to be defined by an employee's collective bargaining agreement. The panel concluded that the state right and the collective bargaining agreement were inextricably intertwined. Under the Railway Labor Act, the claim was a "minor dispute" about defining the rights guaranteed by the flight attendant's collective bargaining agreement. She therefore was required to use the collective bargaining agreement grievance procedure to resolve her claim.

Dissenting, Judge Christen wrote that the flight attendant's claim was not preempted because the right she asserted arose from the Washington Family Care Act, if it existed at all, and did not depend upon the collective bargaining agreement.

## COUNSEL

Mark Andrew Hutcheson (argued) and Rebecca Francis, Davis Wright Tremaine LLP, Seattle, Washington, for Plaintiff-Appellant.

James Paul Mills (argued), Tacoma, Washington, for Defendants-Appellees.

Kathleen Phair Barnard (argued), Schwerin Campbell Barnard Iglitzin & Lavitt LLP, Seattle, Washington, for Intervenor-Defendant-Appellee.

**OPINION**

KLEINFELD, Senior Circuit Judge:

This is a Railway Labor Act preemption case. We decide, not the merits of the case, but which entity should decide upon the merits, the State of Washington, or the System Adjustment Board established pursuant to a collective bargaining agreement.

**Facts.**

Though this became a dispute between the airline and a state agency and union, it arises out of a dispute between a flight attendant and the airline about her sick leave. The flight attendant, Laura Masserant, called in sick in May, to care for her son who was ill. She proposed to take two days off as sick leave to care for him. But she had used up all her sick leave. She had vacation leave coming to her, but vacation leave is scheduled the October before the year in which it is to be used. Masserant had cashed out most of her vacation leave, and had scheduled all her remaining vacation leave for December, so she had none available to her in May. If Masserant had called in sick, despite having used up all her sick leave, she would have accumulated "points." Under the collective bargaining agreement between her union and the airline, if a flight attendant calls in sick too many times after using up all her sick leave, accumulating too many points, she is subject to graduated discipline – counseling, warning, and for enough points, termination.

Masserant claimed an entitlement to use her December vacation leave for her child's illness without being charged points, under the Washington Family Care Act. That state

statute does not entitle an employee to any leave. But if the employee is entitled to paid time off, the employee is entitled to use it for a sick child, not just for her own illness or vacation.[1]

Masserant and the airline disagreed on how to interpret her entitlement. They do not dispute that she was entitled to seven days of vacation leave. But she had scheduled it for December. The airline claimed that she could only use it in December, but Masserant claimed that under the Washington statute, she was entitled to use it in May for her child's illness. Masserant would be entitled to more sick leave in June, and the airline retroactively liberalized its policy so that she could use it in May, but even with that, she still did not

---

[1] Wash. Rev. Code § 49.12.270(1):

> If, under the terms of a collective bargaining agreement or employer policy applicable to an employee, the employee is entitled to sick leave or other paid time off, then an employer shall allow an employee to use any or all of the employee's choice of sick leave or other paid time off to care for:
>
> (a) A child of the employee with a health condition that requires treatment or supervision; or
>
> (b) a spouse, parent, parent-in-law, or grandparent of the employee who has a serious health condition or an emergency condition.
>
> An employee may not take advance leave until it has been earned. The employee taking leave under the circumstances described in this section must comply with the terms of the collective bargaining agreement or employer policy applicable to the leave, except for any terms relating to the choice of leave.

have enough sick leave to cover the time she off she needed in May.  The state agency that administers the Washington statute agrees with Masserant's interpretation of the Washington statute.

The Washington statute does not create an entitlement to paid time off, sick leave or otherwise.  It limits an employee to whatever her entitlement may be "under the terms of a collective bargaining agreement or employer policy."  And it requires that "[t]he employee taking leave under the circumstances described in this section must comply with the terms of the collective bargaining agreement or employer policy applicable to the leave, except for any terms relating to the choice of leave."

The Alaska Airlines-Associated Flight Attendants collective bargaining agreement entitles employees to use available leave, however denoted, to take care of a sick child.[2] It expressly provides that "sick leave" is usable for illness of a family member, not just the employee, and that availability of leave to care for family members is as broad as "the most liberal of the States in which flight attendants are domiciled."[3]

---

[2] "Sick leave may be used . . . pursuant to applicable State law and/or Company policy. . . .  Pursuant to Company policy, *no* attendance points *are assessed* for an absence called in for a sick child *(zero points per day)*."

[3] "Whenever the new collective-bargaining refers to a sick child, it is understood that this is a placeholder for 'family member.'  With the Association's agreement, the Company will apply the most liberal of the laws of the states in which Flight Attendants are domiciled in determining the appropriate definition of 'family member.'  When this definition is determined, including any subsequent amendments pursuant to changes

The dispute between the parties is not about whether Masserant could take her leave, but when. The collective bargaining agreement is stuffed full of limitations to assure that when a plane is being prepared for takeoff, the requisite number of flight attendants are on board. The important part, for Masserant's purposes, are the provisions on scheduling use of vacation leave. Flight attendants get 14 days after their first year, 21 days after five years, 28 days after 10 years, and 35 days after 18 years. The airline has to post a list of available vacation times by October 1 of the preceding year. Flight attendants have 15 days to sign up, and vacation periods are granted on a seniority basis. Flight attendants may trade vacation days, within stated limits.

What they cannot do is fail, without notice, to show up.[4] They have to call in sick a certain number of hours prior to departure of their scheduled flight,[5] and not do it too often or else suffer "points."[6] There is graduated discipline if too many points accumulate. "Points" are deleted for subsequent

---

in law or in the interpretation fo the law, the company will publish the definition and distribute it to the Flight Attendants."

[4] "In all cases of absence, a Flight Attendant will be required to call the designated Company representative."

[5] "Sick calls must be made to the designated Company representative at least two (2) hours prior to *check-in (3 hours prior to* scheduled *departure)*."

[6] For example, a "No Show" equals 2 ½ points, a "Reported Illness Using Quarterly Point Reduction" equals 0 points, a "Reported illness after or without Using Quarterly Point Reduction" equals between ½ and 2 ½ points, and an "Emergency Drop" equals ½ point.

periods of proper attendance,[7] and no action is taken for the first few points,[8] but Masserant's available and unused sick leave would not have covered her for the two day absence she sought in May. Masserant could have called in sick despite lacking available sick leave, three hours before each flight for which she was scheduled, but apparently the airline would have assessed points against her for absence without available leave. She wanted to take two days from the seven days of vacation leave she had scheduled in December, to avoid points. But the airline would not permit her to take her December vacation time in May. Vacation leave is "banked," that is, treated as an entitlement, on January 1, and can be exchanged for cash in advance of the scheduled vacation, but a flight attendant cannot take the time off in advance of the time slot he or she scheduled the previous autumn. Masserant had taken four days of vacation leave and cashed out 21 days when her child got sick, leaving her only the seven days she had scheduled the previous fall for vacation in December. She claimed entitlement to take it in May instead, under the Washington statute.

As a practical matter, Masserant may be entitled to take time off to care for her sick child without penalty even though she has no sick leave available, because for a flight attendant's first 4 ½ points, there is no penalty. If a flight

---

[7] "For each calendar quarter during which a Flight Attendant is active for the entire quarter and has no chargeable occurrences during the entire quarter, two (2) points will be deleted from the Flight Attendant's accumulated points until the total reaches zero (0). Time on leave of absence will not be counted toward record improvement."

[8] "0 – 4 ½ [points]:  No action taken."

attendant gets too many points, they can be reduced by good attendance the next year.

Masserant and her union, the Associated Flight Attendants, disagreed with the airline's position. But instead of grieving it under the collective bargaining agreement grievance procedure, they filed an administrative complaint with the State of Washington Department of Labor and Industries. The Department determined that Masserant was entitled to use her December vacation leave to care for her child in May. The airline was fined $200 for violating the statute. The airline, Masserant, and the union have agreed to delay state appellate and other proceedings so that this Railway Labor Act preemption dispute may be adjudicated. The district court granted summary judgment against the airline's preemption claim. We now review the district court decision de novo.[9]

Some of the relevant provisions in the collective bargaining agreement and employer customs are not entirely clear cut. A provision says that "*no* attendance points *are assessed* for an absence called in for a sick child," but it is not obvious how far this reaches. Though sick leave can clearly be used to care for a sick child, no such explicit provision is made for vacation leave and the evidence suggests that vacation leave cannot be so mixed. A flight attendant can trade vacation days with another flight attendant, subject to a deadline and approval. And a flight attendant can accumulate up to 4 ½ points for absenteeism with no disciplinary action, and subtraction of 2 points per quarter thereafter for quarters in which there are no chargeable occurrences, despite the absence of available leave.

---

[9] *Espinal v. Nw. Airlines*, 90 F.3d 1452, 1455 (9th Cir. 1996).

**Analysis.**

The issue before us is not whether Masserant is entitled to use her vacation leave, scheduled for December, in May, to care for her sick child. Though that is what the case is all about, it is not the issue posed for us. The issue before us is limited to Railways Labor Act preemption, that is, whether the state administrative board or the collective bargaining agreement grievance procedure ought to decide whether Masserant is entitled so to use her December vacation leave in May. This is one of those cases to which the Thomas Reed Powell line applies, "If you think that you can think about a thing inextricably attached to something else without thinking of the thing which it is attached to, then you have a legal mind."[10]

The most important fact about this case is the circularity between the Washington statute and the collective bargaining agreement. The statute makes the employee's entitlement to leave (as opposed to what the leave may be used for) dependent on the collective bargaining agreement. And the collective bargaining agreement expands use of leave to whatever the state statute says.[11] The point of the statute appears to be that, if an employee is entitled to take paid leave, whether denominated sick leave or any other kind, then the leave may be used to care for a sick relative, not just the employee himself. But entitlement to leave, under the statute, is to be defined by the collective bargaining agreement or employer practice. This dependence of the Washington

---

[10] Thurman W. Arnold, *The Symbols of Government* 101 (1935) (attributed to Thomas Reed Powell).

[11] "Sick leave may be used . . . pursuant to applicable State law."

statute on the collective bargaining agreement is established by its command that leave "shall be governed" by the collective bargaining agreement or employer policy.

Masserant's claim can be resolved as a grievance under the collective bargaining agreement. It provides that "any controversy . . . as to the meaning of any of the terms of this agreement" shall be presented as a grievance to a designated individual, with that person's decision appealable to the Flight Attendants' Board of Adjustment (two members appointed by the union, two by the company) and to mediation or arbitration (National Mediation Board under the Railway Labor Act provides a list of seven names, and each party strikes three). The question is not whether Masserant and her union could proceed with the grievance procedure, but whether the state agency is an alternative procedure available to them despite Railway Labor Act preemption.

"The Railway Labor Act was enacted . . . [t]o avoid any interruption to commerce or to the operation of any carrier engaged therein."[12] The Act requires that carriers make agreements and settle disputes with their employees to avoid interruption to commerce.[13] It covers airlines as well as railways.[14] And it includes "a *mandatory* system of dispute

---

[12] *Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters*, 779 F.3d 1069, 1073 (9th Cir. 2015) (en banc) (quoting 45 U.S.C. § 151a) (internal quotation marks omitted) (alternation in the original).

[13] 45 U.S.C. § 152, First.

[14] *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994).

resolution."[15] "Congress's intent in the RLA [was] 'to keep [carriers'] labor disputes *out of the courts*."[16] To facilitate this process, the RLA provides a "mandatory arbitral mechanism to handle disputes 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'"[17]

Disputes under this regime are generally characterized as either major or minor. "[M]ajor disputes seek to create contractual rights, minor disputes to enforce them,"[18] so disputes about defining the rights guaranteed by a collective bargaining agreement are minor disputes.[19] Minor disputes are preempted by the RLA and must be dealt with first through a carrier's internal dispute resolution process, and then a System Adjustment Board comprised of workers and management.[20] The Act states that among its purposes are to provide for settlement of "all" disputes about "pay, rules or working conditions," and "all" disputes growing out of

---

[15] *Aircraft Serv.*, 779 F.3d at 1073 (citing *Bhd. of R.R. Trainmen v. Chi. River & Ind. R.R.*, 353 U.S. 30, 40, 77 (1957) (emphasis added)).

[16] *Fennessy v. Southwest Airlines*, 91 F.3d 1359, 1363 (9th Cir. 1996) (emphasis in original) (quoting *Lewy v. Southern Pac. Transp. Co.*, 799 F.2d 1281, 1289 (9th Cir. 1986)).

[17] *Norris*, 512 U.S. at 248 (quoting 45 U.S.C. § 153, First).

[18] *See Consol. Rail Corp. v. Ry. Labor Execs. Ass'n.*, 491 U.S. 301, 302 (1989) (quoting *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945)).

[19] *Norris*, 512 U.S. at 255.

[20] 45 U.S.C. § 184.

interpretation or application of agreements about "pay, rules, or working conditions."[21]

There is an exception to this broad preemption, though, for independent state rights. Some exceptions are obvious, such as when the state right does not concern "pay, rules or working conditions." But there are plenty of possible claims that arguably overlap both collective bargaining agreement provisions and state law. The Supreme Court appears to have evolved from the broadest possible preemption rule toward a more qualified rule, at least with respect to independent state-created rights.

The seminal preemption case, establishing the breadth of Railway Labor Act preemption, is *Teamsters v. Lucas Flour Co.*[22] It holds that federal labor law must be paramount under the supremacy clause in areas covered by the federal statute, to avoid inconsistent state law interpretations under state contract law of collective bargaining agreements.[23]

*Allis-Chalmers Corp. v. Lueck* holds that an apparently independent state tort unrelated to working conditions, bad faith denial of insurance coverage, was nevertheless preempted, because the bad faith claim was "inextricably intertwined" with the group health policy established pursuant to the collective bargaining agreement.[24] *Lueck*

---

[21] 45 U.S.C. § 151a(4)–(5).

[22] 369 U.S. 95 (1962).

[23] *Id.* at 103–04.

[24] 471 U.S. 202, 213 (1985).

holds that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," the claim is preempted by federal labor law, and a state law suit should be dismissed.[25]  A dictum in *Lueck* speaks directly to the case before us.  *Lueck* says that "[c]laims involving vacation or overtime pay, work assignment, unfair discharge – in short, the whole range of disputes traditionally resolved through arbitration – could be brought in the first instance in state court" were they not deemed preempted.[26]  Such state court action would "eviscerate a central tenet of federal labor-contract law under § 301, that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance."[27]  The question in this case is the one answered by this dictum, though it is merely dictum, because Masserant's claim is precisely that her vacation leave ought to be deemed available in May rather than December, because of state law affecting use of leave.

Though it had been implied in *Lucas Flour* and *Lueck*, the independent state claim limitation on federal preemption was articulated explicitly in *Lingle v. Norge Division*.[28]  An employee's claim for wrongful discharge, under state law protecting employees from retaliatory discharge for filing workers compensation claims, was held not to be

---

[25] *Id.* at 220.

[26] *Id.* at 219–20.

[27] *Id.* at 220.

[28] *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988).

preempted.[29]   The reason was that the state law claim was "independent" of the collective bargaining agreement.[30]   All that mattered for the fired employee's state law claim was whether she was discharged and whether the employer's motive was to interfere with or deter filing of her workers' compensation claim.[31]   This retaliatory discharge claim would be resolved by a "purely factual inquiry" not requiring the court to construe the collective bargaining agreement.[32]

*Livadas v. Bradshaw*[33] and *Hawaiian Airlines v. Norris*,[34] from almost a quarter century ago, are our most recent guidance from the Court.   They expand the independent state right exception to broad Railway Labor Act preemption.

In *Livadas*, a state law required an employer to pay a fired employee's wages immediately, but company practice was to send a check from the central office, which would arrive a few days after termination.[35]   The employee filed a claim against her employer in the appropriate state agency, but the state agency, citing its nonenforcement policy, refused to enforce her claim against her employer because it would have

---

[29] *Id.* at 401.

[30] *Id.* at 407–10.

[31] *Id.* at 407.

[32] *Id.*

[33] 512 U.S. 107 (1994).

[34] 512 U.S. 246 (1994).

[35] *Livadas*, 512 U.S. at 111.

to look to the collective bargaining agreement to determine her wage rate.[36]  The amount due was undisputed and had in fact already been paid, albeit not immediately.[37]  She filed a 1983 action against the state agency seeking a declaration that the agency's enforcement policy was preempted by the National Labor Relations Act.[38]  We ruled that the policy was not preempted,[39] but were reversed.[40]  The Court held that the state agency's policy disadvantaged workers who had entered into collective bargaining agreements, since unrepresented workers could get agency enforcement,[41] so the National Labor Relations Act antidiscrimination provision preempted the state agency from refusing to enforce a claim on account of preemption.  The collective bargaining agreement said nothing about when the wages due to fired employees had to be paid.  The Court held that a claim under state law was not preempted because the question whether wages really were due immediately was one of state law "entirely independent" of any understanding of the collective bargaining agreement, and the amount the employee was entitled to was undisputed.[42]

---

[36] *Id.* at 112–13.

[37] *Id.* at 113–14.

[38] *Id.* at 111–12.

[39] *Livadas v. Aubry*, 987 F.2d 552, 559–60 (9th Cir. 1991).

[40] *Livadas*, 512 U.S. at 110.

[41] *Id.* at 128–30.

[42] *Id.* at 124–25.

Because the collective bargaining agreement was silent, *Livadas* created no tension with most of the previously articulated standards: "inextricably intertwined"; requires "analysis" of the collective bargaining agreement's terms; "independent" and "purely factual"; not requiring that anyone "construe" the agreement. Citing to *Lueck*[43] and *Lingle*,[44] *Livadas* holds that federal preemption cannot not be read so broadly as to "pre-empt nonnegotiable rights conferred on individual employees as a matter of state law," regardless of whether the underlying facts could also have given rise to a grievance under the collective bargaining agreement.[45]  In the context of a claim where the only reference to the collective bargaining agreement would have been determination of the undisputed fact of Livadas's wage rate, the "bare fact that a collective bargaining agreement will be consulted" though its meaning was undisputed, would not require preemption.[46] The determination whether the employee was entitled to a penalty for not having been paid "immediately" depended only on a calendar, and was "entirely independent of any understanding embodied in the collective bargaining agreement."[47]   The agency would merely "look to" the collective bargaining agreement for the wage rates, which was undisputed.[48]

---

[43] *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985).

[44] *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988).

[45] *Livadas*, 512 U.S. at 123.

[46] *Id.* at 124.

[47] *Id.* at 125.

[48] *Id.* (citing *Lingle*, 486 U.S. at 413 n.12).

The other preemption case from the 1993 term, *Hawaiian Airlines, Inc. v. Norris*, involved an employee who claimed he was fired in violation of a state "Whistleblower Protection Act" because he refused to certify a plane he thought was unsafe.[49]  As in *Livadas*, the Court held that even though the basis for an independent state law claim could give rise to a grievance pursuant to the collective bargaining agreement, that did not imply that only a grievance could be brought, to the exclusion of a claim in state court.[50]  The "only source" of the right the fired employee sought to enforce, protection of whistle blowers, was state law.[51]  "[W]here the resolution of a state-law claim depends on an interpretation of the CBA, the claim is preempted,"[52] but "as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement."[53]  State law claims "entirely independent" of the collective bargaining agreement are not preempted and subject to Railway Labor Act or LMRA arbitration.[54]

We have had quite a few opportunities in the decades since these decisions to try to apply them, and have

---

[49] 512 U.S. 246, 249–51 (1994).

[50] *Id.* at 261 ("[T]he existence of a potential CBA-based remedy d[oes] not deprive an employee of independent remedies available under state law.").

[51] *Id.* at 258 (quoting *Andrew v. Louisville & Nashville R. Co.*, 406 U.S. 320, 324 (1972)).

[52] *Id.* at 261

[53] *Id.* at 262 (quoting *Lingle*, 486 U.S. at 408–10 (1988)).

[54] *Id.* at 259 & n.10.

articulated varying formulas for adjudication. In so doing, we have recognized that distinguishing preempted from non-preempted claims under state law "is not a task that always 'lends itself to analytical precision.'"[55] The fundamental question is always whether the state right is sufficiently independent of the collective bargaining agreement to avoid the broad preemption of the National Labor Relations Act and Railway Labor Act. That is a question requiring judgment about the facts and agreement in the particular case, and cannot be resolved merely by relying on one or another of the varying words and phrases in the cases: "inextricably intertwined," "analysis of the terms," "entirely independent," "interpretation," and "look to."

We have developed, as our tool for making that unavoidable judgment, a three-step decision tree. The background is the broad preemption of the Supreme Court decisions discussed above. Our three-step decision tree says when the exception to preemption for an independent state right can be made:

> [The] court must consider: (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by

---

[55] *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007) (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc)).

private contract.    A state law will be
preempted only if the answer to the first
question is "yes," and the answer to either the
second or third is "no."**[56]**

Since a "yes" answer to the first question, and a "no" to either
of the other two, compels preemption, we often have not
needed to address all three.

   In the cases in which we identified an independent state
claim that was not preempted, most frequently the dispute
was the extent to which the collective bargaining agreement
had to be considered to decide whether the state claim was so
independent as not to be preempted.  The California disability
discrimination claims were not preempted in *Jimeno* and
*Espinal*, because the collective bargaining agreement
contained no general antidiscrimination clause, and the state
discrimination claim could be evaluated without construing
the collective bargaining agreement.**[57]**    In *Balcorta v.
Twentieth Century–Fox Film Corp.*, we held that a California
statute requiring motion picture employees to be paid within
24 hours of discharge was not preempted, because a cursory
examination of the collective bargaining agreement showed
that it did not say what "discharge" meant or when a

---

[56] *Miller v. AT&T Network Sys.*, 850 F.2d 543, 548 (9th Cir. 1988)
(footnote omitted); *see also Espinal v. Nw. Airlines*, 90 F.3d 1452, 1457
(9th Cir. 1996) (quoting the *Miller* standard); *Jimeno v. Mobil Oil Corp.*,
66 F.3d 1514, 1523 (9th Cir. 1995) (same); *Cook v. Lindsay Olive
Growers*, 911 F.2d 233, 240 (9th Cir. 1990) (same).

[57] *Espinal v. Nw. Airlines*, 90 F.3d 1452, 1457 (9th Cir. 1996);
*Jimeno*, 66 F.3d at 1524.

discharged employee had to be paid.[58]   The state law claim did not "require us even to refer to the collective bargaining agreement, let alone interpret it."[59]        In *Cramer v. Consolidated Freightways, Inc.*, a California law prohibiting two-way mirrors that allowed observation of toilets was not preempted, because the employees' privacy claims were "not even arguably covered by the collective bargaining agreement."[60]

*Burnside v. Kiewit Pacific Corp.* perhaps goes the furthest of any of our cases in rejecting preemption, since the employees' state law claim for additional compensation for daily meetings and travel time was addressed to some extent in the collective bargaining agreement.[61]    But state law provided that the state rule applied "unless the collective bargaining agreement *expressly* provides otherwise."[62] The union and employer could opt out of the state law rule, but the collective bargaining agreement did not expressly so provide.   Thus the state rule required only a look at the collective bargaining agreement to see whether there was an express "opt-out," and no further analysis of it was needed to adjudicate the state claim.   We limited our decision:  "Our decision today reaches only opt-out, not opt-in statutes."[63]

---

[58] 208 F.3d 1102 (9th Cir. 2000).

[59] *Id.* at 1111.

[60] 255 F.3d 683, 688 (9th Cir. 2000) (en banc).

[61] 491 F.3d 1053 (9th Cir. 2007).

[62] *Id.* at 1062 (emphasis added).

[63] *Id.* at 1064 n.11.

On the other hand, we held that the state claim was preempted in *Firestone v. Southern California Gas Co.*[64] The state law claim was for overtime at time and a half, but had an exemption for collective bargaining agreements that met certain terms.[65] Because the claim required "the collective bargaining agreement [to] be interpreted to determine . . . whether California's overtime exemption provision applies," it was not sufficiently "independent" to avoid preemption.[66] We distinguished *Livadas* because there the collective bargaining agreement had no terms that needed to be "interpreted."[67]

The words used to describe what distinguishes an independent state right are not talismanic, and are not consistent from case to case. The Supreme Court has used "analysis of the terms," "construe," requiring "interpretation," and other phrases, and we have likewise used "consult," "interpret," "look at," "analysis," and others.[68] We have recognized the opacity of these attempts to draw a line between independent and intertwined state claims. In

---

[64] 219 F.3d 1063 (9th Cir. 2000).

[65] *Id.* at 1066.

[66] *Id.* at 1066–68.

[67] *Id.* at 1067.

[68] Many cases also tell us that we may not allow the scope of preemption to grow from an "acorn" into a "mighty oak." *See, e.g.*, *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994); *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1076 (9th Cir. 2005).

*Balcorta*, we called the line "hazy."**[69]**   In *Cramer* and *Burnside*, we said it was not "a line that lends itself to analytical precision."**[70]**

What we wind up with from all these cases is the need to exercise judgment, not a mechanical rule.  Our three part test and words and phrases establish only a "hazy" and indeterminate line between independent state rights and state rights inextricably intertwined with the collective bargaining agreement.  In this case, the sounder view is that the state law right and the collective bargaining agreement are indeed inextricably intertwined.

The Washington statute says that whatever right to leave to care for family members the employee has depends on her collective bargaining agreement.  We held in *Burnside* that "if the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there."**[71]**  In this case, the right established by state law is a right to use paid leave to take care of a sick child or other designated family members:

> (1)   If, under the terms of a collective bargaining agreement or employer policy applicable to an employee, the employee is entitled to sick leave or other paid time off,

---

**[69]** *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000) (quoting *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 749 (9th Cir. 1993)).

**[70]** *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc); *see Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007) (quoting *Cramer*, 255 F.3d at 691)).

**[71]** *Burnside*, 491 F.3d at 1059.

then an employer shall allow an employee to use any or all of the employee's choice of sick leave or other paid time off to care for:

> (a) A child of the employee with a health condition that requires treatment or supervision; or

> (b) a spouse, parent, parent-in-law, or grandparent of the employee who has a serious health condition or an emergency condition.

An employee may not take advance leave until it has been earned. The employee taking leave under the circumstances described in this section must comply with the terms of the collective bargaining agreement or employer policy applicable to the leave, except for any terms relating to the choice of leave.

(2) Use of leave other than sick leave or other paid time off to care for a child, spouse, parent, parent-in-law, or grandparent under the circumstances described in this section shall be governed by the terms of the appropriate collective bargaining agreement or employer policy, as applicable.[72]

The statute expressly limits the right it establishes to employees "entitled" to leave "under the terms of a collective bargaining agreement or employer policy." The employee

---

[72] Wash. Rev. Code § 49.12.270.

"must comply" with those terms "except for any terms relating to the choice of leave." This dependence of the state claim on the terms of the collective bargaining agreement means that the collective bargaining agreement has to be analyzed to see whether the employee is entitled to paid leave as in *Firestone*. If the flight attendant is entitled to leave under the collective bargaining agreement, she can use it to care for her son when he is ill. If not, not. The statute directs us to the collective bargaining agreement to determine whether the employee is entitled to any leave.

Under the three part test, "if the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there."[73] Since the statute creates no right to any kind of paid leave, and conditions its expansion of rights upon an employee entitlement under the collective bargaining agreement, "the analysis ends there." The right to leave in this case is "substantially dependent on analysis of a collective-bargaining agreement."[74] Therefore it is preempted.

The union and the state agency argue that no "analysis" of the collective bargaining agreement is needed because of "the undisputed restrictions" the collective bargaining agreement places on use of prescheduled vacation leave. Because they do not dispute that Masserant was *not* entitled to use her vacation leave scheduled for December to care for her sick child in May, they argue, no analysis is necessary. They argue that because a mere "look to" the collective

---

[73] *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).

[74] *Id.* at 1059 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)); *see Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

bargaining agreement and employer practice establishes that she is not entitled to use her December leave in May, no "analysis" is needed, so they avoid preemption under the second prong of the three part test. Whatever right she has, they argue, arises solely out of the Washington statute.

That argument would fit a statute saying "regardless of whether an employee is entitled to paid leave under a collective bargaining agreement or employer policy, the employee is nevertheless entitled to up to ten days of leave per year to care for sick family members," because it would establish a right independent of the collective bargaining agreement. But the Washington statute says the opposite, that the employee entitlement is conditioned upon her entitlement to paid time off under the collective bargaining agreement. She has to show an entitlement to leave under the collective bargaining agreement to use her leave to care for her sick child, according to the statute. Thus whatever right Masserant has cannot, by the terms of the statute, arise "solely" out of the statute.

The argument for Masserant seems to be that no "analysis" of the collective bargaining agreement is needed because it is plain and undisputed that she is not entitled to paid leave under it. That argument is mistaken for two reasons. First, it ignores the purpose of the distinction between "analysis" and mere "looking at." The purpose is to distinguish independent state rights from rights intertwined with the collective bargaining agreement. The purpose is not to distinguish hard from easy analysis. "Analysis," in the context of determining whether the state right is independent of the collective bargaining agreement, refers to whether the state claim cannot logically be determined independently of the provisions of the collective bargaining agreement. If the

right is not logically independent, it's not "independent," whether the analysis is intellectually challenging or not. Otherwise, the point of the distinction, preserving a uniform meaning to the collective bargaining agreement, would be defeated. Any analysis can be made to sound simple or complex.

Second, the argument overlooks the first part of the three part test, a barrier which, if not overcome, precludes any need to ask whether the collective bargaining agreement would be analyzed in the state proceeding. Preemption applies because the right to take paid leave arises solely from the collective bargaining agreement. This statute only applies if the employee has a right conferred by the collective bargaining agreement, so the state right is intertwined with, and not independent of the collective bargaining agreement.

Our dissenting colleague relies heavily on our recent decision in *Kobold*,[75] but, as *Kobold* says, that case was "similar to *Livadas* in all pertinent respects" because the outcome was controlled by the calendar, not the collective bargaining agreement.[76] *Kobold* did not expand Railway Labor Act preemption. The Oregon statute required the employer to pay the deducted amount within seven days of when the wages were due.[77] "Seven days" could be counted out on a calendar and needed no analysis of the collective bargaining agreement. Likewise, *Kobold* held that the breach of fiduciary duty claim, relying on two Oregon statutes, was

---

[75] 832 F.3d 1024 (9th Cir. 2016).

[76] *Id.* at 1040.

[77] *Id.*

not preempted because "[t]he statutory provisions create and impose duties on an employer independent of a CBA."[78]  By contrast, the Washington statute at issue in this case creates a duty conditioned and dependent on the collective bargaining agreement.

Preemption of course does not mean that Masserant was not entitled to use her December vacation time in May to care for her son.  All it means is that the question whether she could use her vacation leave in advance of her scheduled time for this purpose is to be determined by the dispute resolution process in the collective bargaining agreement, not by the state claim resolution process.  All we decide is which dispute resolution process must be used, not what result it must reach.

The district court erred by rejecting preemption. Accordingly, we reverse and remand for appropriate resolution so that the dispute can be resolved by the process established in the collective bargaining agreement.

**REVERSED AND REMANDED.**

---

CHRISTEN, Circuit Judge, dissenting:

The district court recognized that the underlying issue in Masserant's claim is not what benefits the collective bargaining agreement provides, it is whether the terms of the parties' CBA violate the Washington Family Care Act. Masserant argues that the WFCA creates "non-negotiable

---

[78] *Id.* at 1041.

rights" that Alaska Airlines and AFA could not bargain away. To resolve Masserant's claim, the CBA need not be interpreted. The parties agree that the CBA identifies circumstances under which accrued and scheduled leave may be used, and using scheduled leave to care for an employee's sick child is not one of those circumstances. In my view, the district court correctly ruled that the right Masserant asserts arises from the WFCA, if it exists at all. Masserant's claim is not dependent upon the CBA; it is not preempted; and she should be allowed to pursue it in the state administrative and judicial process. For these reasons, I respectfully dissent.

## I.   Masserant's claim is not preempted by the Railway Labor Act.

Masserant filed a Personal Leave Complaint with the Washington Department of Labor & Industries in which she argued that the terms of the parties' CBA violate the WFCA. She prevailed at the first level of the Department's administrative process and the Department issued a $200 notice of infraction to Alaska Airlines for denying her leave request. Alaska Airlines filed this action in federal court seeking a declaration that Masserant's claim and the WFCA choice-of-leave provisions are preempted by the Railway Labor Act (RLA). *See* 45 U.S.C. § 151–188; Wash. Rev. Code § 49.12.265–.295. The district court agreed with Masserant, her union, and the Department of Labor & Industries that the RLA does not preempt state enforcement of the WFCA because Masserant's WFCA claims are independent of the parties' CBA.

On appeal to our court, Alaska Airlines argues that the RLA requires Masserant to litigate her dispute via the mandatory grievance procedures outlined in the CBA, rather

than through state administrative procedures. The RLA requires that minor disputes, such as the one at issue here, must first be addressed in the carrier's internal dispute resolution process and, if not resolved there, presented to an Adjustment Board comprised of workers and management.[1] *See* 45 U.S.C. § 184; *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 563 (1987). The RLA preempts state law claims that interfere with the Adjustment Board's exclusive jurisdiction to resolve minor disputes. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994). If a claim is based on rights independently conferred by state law, not by a CBA, it is not preempted. *See Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994); *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). We examine Masserant's claim closely because the Supreme Court has cautioned that federal laws "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas*, 512 U.S. at 123.

In *Burnside v. Kiewit Pacific Corp.*, our court articulated a two-part test for determining whether a state law claim that appears to implicate a collective bargaining agreement is preempted by § 301 of the Labor Management Relations Act (LMRA). *See* 491 F.3d 1053. The *Burnside* test is critical to the outcome of this appeal because the Supreme Court has

---

[1] The RLA divides labor disputes into "major" and "minor" disputes. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562–64 (1987). "Major disputes" are "those arising 'out of the formation or change of collective bargaining agreements.'" *Id.* at 563 (quoting *Detroit & T.S.L.R. Co. v. Transp. Union*, 396 U.S. 142, 145 n.5 (1969)). "Minor disputes" are those "'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Id.* (quoting 45 U.S.C. § 153). The parties agree that only the minor dispute procedures are relevant to this appeal.

held that the preemption standard under LMRA § 301 is the same one that applies to the RLA.  *See Hawaiian Airlines*, 512 U.S. at 260.  Under *Burnside*, the court first inquires whether the asserted cause of action involves a right conferred on the employee by virtue of state law or by the terms of a CBA.  *Burnside*, 491 F.3d at 1059.  "If the right exists solely as a result of the CBA, then the claim is preempted, [] our analysis ends there," and the claim must be resolved under the RLA's mandatory arbitral mechanisms.  *Id*; *see Hawaiian Airlines*, 512 U.S. at 252 ("[Claims preempted under the RLA] must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions.").  Even if the asserted right does exist independently of the CBA, at step two the court must "consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'"  *Burnside*, 491 F.3d at 1059 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)).  Claims that are substantially dependent on an analysis of a CBA are also preempted.  *Id.* at 1060.

This court recently explained the policies underlying *Burnside*'s two-part test:

> The *Burnside* factors reflect two driving concerns of preemption doctrine: first, preventing "parties' efforts to renege on their arbitration promises by 'relabeling' as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements," *Livadas*, 512 U.S. at 123, and second, preserving "a central tenet of federal labor-contract law . . . that it is the arbitrator,

not the court, who has the responsibility to interpret the labor contract in the first instance," *Lueck*, 471 U.S. at 220.

*Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016). Masserant's claim implicates neither of the aforementioned concerns: she does not claim under the guise of a tort lawsuit that Alaska Airlines breached its contract with her, nor does she ask the court to interpret her CBA.

### A. Masserant's complaint with the Department of Labor & Industries involves a right that exists, if at all, by virtue of state law.

*Burnside* made clear that the operative inquiry at the first step of this preemption analysis is whether the right at issue is conferred by state law or by the CBA. *See Burnside*, 491 F.3d at 1059. "[T]o determine whether a particular right inheres in state law," courts "consider 'the *legal* character of [the] claim, as independent of rights under the collective-bargaining agreement [and] not whether a grievance arising from precisely the same set of facts could be pursued.'" *Id.* at 1060 (second alteration in original) (quoting *Livadas*, 512 U.S. at 123).

It is easy to imagine another similarly situated flight attendant who might be bound to arbitration, such as an employee who contests whether she had accrued the leave at issue. Because the CBA determines how available leave should be calculated, this hypothetical flight attendant's asserted right would arise from the CBA, and, at step one our analysis would end. *See Burnside*, 491 F.3d at 1059. Masserant's claim is different because she asserts a different

right, and to apply the *Burnside* test properly, it is critical to identify the precise right asserted.[2]  Masserant prescheduled her accrued vacation leave for December, but sought to use it early to care for her sick child.  She claims the right to *use* accrued leave in a certain way, not the right to additional accrued leave.  Notably, Alaska Airlines does not dispute that Masserant's leave had accrued; it objects to Masserant's insistence that she should be free to reschedule it.   The district court recognized that the right at issue is the right to use accrued leave, as do the parties.  Masserant describes her claim as a violation of the WFCA based on "earned time that [she] was denied to use [by Alaska Airlines]";  Alaska Airlines acknowledges that the asserted right is Masserant's "claimed right to reschedule her December vacation days for May"; and the Department of Labor & Industries frames the question as whether the WFCA "confers an independent statutory right of *flexibility* that is superimposed on whatever leave is available to an employee under a collective bargaining agreement or employer policy."

The majority concludes that Masserant asserts a right that is not independent from the CBA because "the [WFCA] creates no right to any kind of paid leave, and conditions its expansion of rights upon an employee entitlement under the collective bargaining agreement."  Because Masserant does not argue that the WFCA creates a right to paid leave, or claim to be entitled to additional leave, or even that she is entitled to use her accrued leave early under the terms of the

---

[2] The Supreme Court has cautioned that this preemption analysis must be conducted on a case-by-base basis. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("The full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis."); *see Adkins v. Mireles*, 526 F.3d 531, 541 (9th Cir. 2008).

CBA, the court's reasoning misses the mark. Masserant asserts the right to use her accrued vacation leave as family medical leave, a right that *might* arise from the statutory protections within the WFCA, but one that certainly is not provided by the CBA.

The majority reasons that because the WFCA refers to leave provided under the terms of a CBA, "whatever right Masserant has cannot, by the terms of the statute, arise 'solely' out of the statute." But under *Burnside*'s first step, the question is whether the asserted right "exists independently of the CBA," not whether it arises solely out of statute. *Burnside*, 491 F.3d at 1059 ("If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there."). A claim is not preempted just because it is based on a state statute that refers to rights included in a CBA. For example, in *Livadas*, the Supreme Court concluded that LMRA § 301 did not preempt a claim challenging an employer's failure to promptly pay wages at the time of severance. 512 U.S. at 125. The court recognized that the employee's right to be paid arose from the CBA, but because the employee contested the failure to pay severance wages *promptly*, and the right to prompt payment was afforded only by the state statute, the claim was not preempted. *Id.* (holding the right at issue arose out of state law because "[b]eyond the simple need to refer to bargained-for wage rates in computing the penalty, the collective-bargaining agreement [wa]s irrelevant to the dispute").

Our recent decision in *Kobold* supports Masserant's position. *See* 832 F.3d 1024. In one of the appeals consolidated in *Kobold*, the court addressed an Oregon statute that permitted employers to deduct a portion of employees' wages as health insurance premiums if authorized to do so by

a CBA. *Id.* at 1037–42. The statute made such deductions unlawful if the funds were not properly applied to pay insurance premiums within the time specified by the CBA or, if the CBA was silent, within the statutory limit of seven days. *Id.* at 1038. The allegation in *Kobold* was that the employer failed to transmit the withheld insurance premiums to the health insurance plan in a timely manner. *Id.* at 1037. Our court held that the claim was not preempted, even though the CBA provided for this type of pay deduction, because the asserted claim was for the failure to remit the deductions in a timely manner, and only the statute specified a seven-day limitation for transmitting the withheld premiums. *Id.* at 1040. The CBA did not specify a time period. *Id.* Our court also held that the *Kobold* plaintiff's breach of fiduciary duty claim was not preempted because the Oregon statute governing such claims "create[d] and impose[d] duties on an employer independent of a CBA." *Id.* at 1041. In contrast, the *Kobold* court ruled that the same plaintiff's claim for money had and received was preempted, because "[the employer's] authority to deduct funds from [the plaintiff's] paychecks and [the plaintiff's] right to have those funds applied toward his health insurance premiums" were based on the CBA and without the CBA, the plaintiff "would have no basis upon which to bring the money had and received claim." *Id.*

It is not enough that a CBA refers to a right that is provided by statute. Our court has held that a claim based on a statutorily guaranteed right is not preempted, even when the CBA generally provides for a similar right. *See Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102 (9th Cir. 2000). In *Balcorta*, we held that a California law requiring employers to pay certain employees in the film industry within twenty-four hours of their discharge was not

preempted by LMRA § 301. *Id*. The right to payment and the timeliness of the payments were addressed by the CBA, but we concluded the claim for failure to tender payment within twenty-four hours was not preempted because "whether a violation has occurred is controlled only by the provisions of the state statute and does not turn on whether the payment was timely under the provisions of the collective bargaining agreement." *Id*. at 1111; *see also Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1082 (9th Cir. 2005) (holding claim was not preempted where it was based on a statutorily guaranteed right to work-free meal periods even though the CBA purported to waive the right to work-free meal periods).

Like the rights at issue in *Livadas*, *Kobold*, and *Balcorta*, if Masserant has the right to use her vacation time for family leave, it arises from a state statute, here, the WFCA, and not from the parties' CBA.

## B. The right Masserant asserts is not substantially dependent on analysis of the CBA.

The second step of the *Burnside* analysis requires a "determin[ation] whether a state law right is 'substantially dependent' on the terms of a CBA."[3] *Burnside*, 491 F.3d at 1060 (citation omitted). To apply this part of the test, a court must "decide whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Id.* (alteration in original) (citation omitted). The line between "looking to" and "interpreting" is sometimes less than clear-cut, but "'when the meaning of contract terms is not the subject of dispute,

---

[3] Although the majority analyzes Masserant's claim in the context of *Burnside*'s step two, it ultimately relies on step one to conclude that Masserant's claim is preempted.

the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.'" *Id.* (alteration in original) (quoting *Livadas*, 512 U.S. at 125); *see Hawaiian Airlines*, 512 U.S. at 262 ("[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for . . . pre-emption purposes." (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408–10 (1988))).

In *Kobold*, where the state law required employers to transmit paycheck deductions to health insurance plans in a timely manner, we held that the claim was not preempted at *Burnside*'s second step because the CBA "unambiguously specif[ied]" the parties' rights and obligations and therefore did not require interpretation. 832 F.3d at 1040; *see also Balcorta*, 208 F.3d at 1109–10 (holding claim not preempted where court is required to "read and apply" CBA provisions that are "neither uncertain nor ambiguous"). In *Matson v. United Parcel Service, Inc.*, 840 F.3d 1126 (9th Cir. 2016), we held that a hostile work environment claim only "peripheral[ly]" involved the CBA and was not preempted because no interpretation of the CBA was required. *Id.* at 1134–35. *Matson* involved an employee who claimed that she was subject to a hostile work environment, in part because her supervisors assigned "extra work" in a way that favored male co-workers. *Id.* at 1129. The employer argued that the employee's claim was preempted because the term "extra work" appeared in the CBA and her claim could not be resolved without interpreting the term. *Id.* at 1133. But the employee's hostile work environment claim was not dependent upon consideration of the extra work assignments because her contention that extra work was disproportionately assigned to male coworkers was just one example of ways in

which the employee argued her male coworkers were favored. *Id.* We explained that the hostile work environment claim was not preempted at *Burnside*'s second step because "[t]he correct interpretation of the CBA . . . [was] purely peripheral to the relevant question with respect to assigning work." *Id.* at 1134–35.

In Masserant's case, the key provisions of the CBA are also wholly undisputed and do not require interpretation. As of May 2011, when her child was ill, Masserant had an accrued paid vacation scheduled for December. The CBA permits vacation leave to be used at unscheduled times in certain circumstances, but does not address whether vacation leave may be used for an absence due to a flight attendant's own illness or a child's illness. Because "[t]here is nothing in the . . . CBA to interpret," the WFCA's state-law right is not substantially dependent on the CBA. *See Kobold*, 832 F.3d at 1040.

The majority concludes that because Masserant refers to the CBA's leave provision to argue that it violates the WFCA, some "analysis" is required. But it does not explain why the CBA must be consulted, much less analyzed. On this record, I conclude that Masserant's claim does not "substantially depend" on analysis of the CBA, and that it is not preempted under the second prong of *Burnside*.

There is persuasive force to Alaska's argument that "crew absences present unique concerns in the airline industry," because "without the requisite number of flight attendants on board, a plane cannot take off." But the limited question before this panel is the proper forum for resolving the important underlying questions raised by Masserant's claim. I would hold only that the district court correctly concluded

that the Washington Department of Labor & Industries'
enforcement of Masserant's WFCA complaint is not
preempted by the RLA, and that the correct forum for
resolving the parties' dispute is the state administrative
process.